## NEW YORK CASUALTY CO. v. YOUNG MEN'S CHRISTIAN ASS'N et al.

## YOUNG MEN'S CHRISTIAN ASS'N v. NEW YORK CASUALTY CO. et al.

### Nos. 11739, 11740.

Circuit Court of Appeals, Eighth Circuit.

April 17, 1941.

Donald Evans, of Des Moines, Iowa (William F. Riley and Ehlers English, both of Des Moines, Iowa, on the brief), for New York Casualty Co.

Eskil C. Carlson, of Des Moines, Iowa (Robert Lappen and C. E. Kramer, both of Des Moines, Iowa, on the brief), for Young Men's Christian Ass'n.

Alex M. Miller, of Des Moines, Iowa (Jesse A. Miller and Fred C. Huebner, both of Des Moines, Iowa, on the brief), for appellee Employers Mut. Casualty Co.

Fred C. Huebner, of Des Moines, Iowa (Jesse A. Miller, Alex M. Miller, and Charles W. Joiner, all of Des Moines, Iowa, on the brief), for appellee Central Surety & Insurance Corporation.

Before STONE and GARDNER, Circuit Judges, and OTIS, District Judge.

STONE, Circuit Judge.

The widow of Arthur Andrews recovered a judgment for personal injuries resulting in his death against the Young Men's Christian Association. Andrews v. Young Men's Christian Association of Des Moines, 226 Iowa 374, 284 N.W. 186. At the time of the injury to Andrews, the Association had three liability policies as follows: One by the New York Casualty Company on an elevator liability policy; one by the Employers Mutual Casualty Company on a public liability policy; and one by the Central Surety and Insurance Corporation on a workmen's compensation liability policy.

After affirmance of the above personal injury judgment, the New York company filed its complaint for a declaratory judgment that it was not liable under its policy. The Association answered praying a declaration of liability against the New York company and also filed a cross-complaint bringing in the Employers and the Central and asking declarations of liability against each of them. Those two companies answered denying liability. The facts were stipulated. A declaratory judgment was entered against the New York company and in favor of the Employers and of the Central. The New York company brings its appeal (No. 11,739) and the Association brings its cross-appeal (No. 11,740) to test

the liability of the Employers and of the Central.

Since the liability of each of these companies depends upon the provisions of the particular policy and upon the state of facts here, one statement of such facts may be set forth and thereafter the application of such facts to each policy examined separately.

### Facts.

The pertinent facts here are that Andrews was a skilled workman out of regular employment who had been employed by the Works Progress Administration. The Administration had requested the Association to furnish work for him and for others. While Andrews was working inside an elevator shaft in the Association building repairing a bracket on the basement elevator door, the elevator descended into the basement injuring him so severely as ultimately to cause his death.

During the time Andrews had been working at the Association building he had been doing different kinds of work in the building under the direction and supervision of the superintendent of the building and he was working under the direction of the superintendent in the particular work in which he was engaged at the time of the injury. The work and labor to be done by him was selected by and the work done in the manner directed by the superintendent and the hours of such work were directed and designated by the Association within the limits of the provisions and regulations of the W. P. A. The W. P. A. had the right at any time to withdraw Andrews and the other workers from the services they were rendering in the Association building and the Association had a similar right to dispense with such services. The Association had nothing to do with the hiring or discharge or payment of Andrews or any of these workers.

The bracket which Andrews was repairing at the time of the accident was on the inside of a door opening into the elevator shaft. This door was attached to the shaft and not to the elevator. It performed no function other than as a part of the machinery enabling the door into the shaft at the basement story to be opened and closed. To do this repair work it was necessary to keep the doors open and for Andrews to mount a ladder in the shaft pit, there to remove the bracket and, after welding it, to replace it. The superintendent of the Association aided Andrews by holding a light.

At the time Andrews was working in the shaft the elevator was being operated for the transportation of persons from one floor to another. The Superintendent had twice instructed the elevator operator not to bring the elevator below the first floor until he told him otherwise. In spite of such instructions, the elevator descended below the first floor while Andrews, who was standing on a ladder, was replacing the bracket. Andrews was knocked from the ladder and injured.

### New York Casualty Company.

The obligation of this policy was—with certain expressed exclusions—to protect against bodily injuries "by any person or persons not employed by the Assured as the result of an accident occurring by reason of the existence, maintenance or use, of any elevator or elevating or lowering device which is described in Declaration 4, its well, shaft or hoistway or the machinery, equipment or appliances used in connection therewith and appurtenant thereto." The here pertinent exclusions in the policy were as follows:

"This policy shall not cover:

"(a) * * *

"(b) * * *

"(c) bodily injuries or death caused by the construction, reconstruction, demolition or extraordinary repair of any elevator or hoisting device, or the building or structure within which it is contained; but privilege is granted under this policy to make such ordinary alterations and repairs as are necessary to the care of any elevator covered herein and its maintenance in good condition, including the renewal of existing mechanical equipment, provided that such elevator shall not be used for service while such work is being done;

"(d) the liability imposed or assumed by the Assured under any Workman's Compensation Statute;

"(e) the liability of the Assured to employees which is based on the relationship of master and servant."

 The New York company advances several claims why this accident was not within the provisions of the policy. It is necessary to examine but one of these. That contention is that the policy excluded injuries to employes and that Andrews was, at the time of injury, an employe of the

Association within the meaning of the policy. This position is well taken. Not only does this policy, in the liability clause, expressly confine liability to "any person or persons not employed by the Assured" but the provision covering exclusions expressly excludes liability under any workmen's compensation statute and "the liability of the Assured to employes which is based on the relationship of master and servant." The last quoted expression makes it very clear that the policy intended to exclude from liability an injury to anyone who might be regarded as an employe under the relationship of master and servant.

At the time of this injury, Andrews was an employe as regards the relationship of master and servant because he occupied that status known to the law as a "loaned" employe and because the doctrine of loaned employe is recognized in Iowa. Lembke v. Fritz, 223 Iowa 261, 272 N.W. 300; Traynor v. Keefe Con. Co., 199 Iowa 575, 202 N. W. 218; Norton v. Day Coal Co., 192 Iowa 160, 180 N.W. 905; Ash v. Century Lbr. Co., 153 Iowa 523, 133 N.W. 888, 38 L.R.A.,N.S., 973. As to the general doctrine see Marion Steam Shovel Co. v. Bertino, 82 F.2d 541, this Court.

The determination of the trial court that Andrews was not such a servant at the time of the accident is based upon the conclusion that, although "the evidence does disclose that at the time of the injury the superintendent of the Y. M. C. A. was directing the method and manner of the work being done by Arthur Andrews and the Supreme Court of Iowa recognizes the lent servant doctrine and that one may be employed without being a servant * * * yet the Supreme Court of Iowa in the case of Hoover v. Independent School District, 220 Iowa 1364, page 1368, 264 N.W. 611, page 613, Il, has expressly said that the rule does not apply under the situation here presented, that is, where he was employed by and working for the Works Progress Administration." It thus appears that although the trial court recognized that Andrews was a loaned servant at the time of his injury, yet the court felt that the decision in the Hoover case excluded his being regarded as an employe within the meaning of the New York Company policy.

The court was correct in his view of the facts, that is, that Andrews was a loaned employe at the time of the accident. The court erred in construing the Hoover case as excluding a loaned employe from the definition of employe as used in this policy. In the Hoover case an employe of the Civil Works Administration was injured while he, with other such employes, was engaged in the repair of a school house. The point determined in that case was that the injured employe was not a loaned employe because "the workers were employed, told when and where to work, and paid for their services, by the Civil Works Administration. The contract of service which these workers had was entirely with the Civil Works Administration" (264 N.W. at page 613); that such was the meaning of the Hoover case is made clear and emphasized in the later case of Ford v. Independent School District of Shenandoah, 223 Iowa 795, 273 N.W. 870, page 872, where the court states that the relation that existed between the district and the injured person had been theretofore determined in the Hoover case and where the court, after quoting from the Hoover case, says: "The result is that the contention that there was an implied contract or warranty, above mentioned, cannot be grounded upon any common law or statutory duty of an employer to an employee." We think the court should have declared no liability on the New York company policy. This disposes of and results in reversal as to appeal No. 11,739.

### Motion to Dismiss Cross-Appeal.

Before we can consider the cross-appeal of the Association, we must dispose of a motion to dismiss that appeal filed by the Employers and by the Central. That motion is based upon the alleged failure to file a "statement of points relied upon" sufficient to comply with Rules 24(1) and 14 (2, Fourth) and (4).

Rule 24(1) requires such statement of points to be filed not later than five days after filing the transcript in this Court. The rule requires that such statement "shall set out separately and particularly each error asserted and intended to be urged." This requirement necessitates the same separation and particularity of statement as does the present "assignment of errors" in criminal appeals or as did the former assignment of errors in civil appeals. The purpose of the rule is to definitely and separately point out the errors complained of in order to clearly define and confine the issues on appeal.

The issue here is whether this statement of points sufficiently complies with the requirements of the rule. This

statements fails to point out any specific or particular error of the trial court. It means no more than that the judgment declaring the Employers and the Central not liable is erroneous. Such a designation is too general to present anything for review by this Court (Butler v. United States, this Court, 108 F.2d 27, 28) and the judgment may be affirmed or the appeal dismissed. Butler v. United States, 8 Cir., 108 F.2d 27, 28; Mathewson v. First Trust Co., this Court, 100 F.2d 121, 123. The motion to dismiss this appeal is well founded. We deem it not out of place to state that we have carefully examined the contentions on the merits of cross-appellant and a majority of the Court believe them not well founded. However, since the determination as to all of these three companies was included in one judgment and since we think the court erred only in so far as the judgment affected the New York company, the more appropriate order here is to modify the judgment in so far as the New York company is concerned, and, as so modified, the judgment will be affirmed. The case will be remanded with instructions to set aside the judgment and reenter it as so modified.

OTIS, District Judge (concurring).

I concur fully in all that is said in the opinion concerning appeal No. 11739, involving the liability of the New York Casualty Company. I concur also in the conclusion that the motion to dismiss the appeal of the Young Men's Christian Association (No. 11740) is well founded and, on that account alone, I concur in the result affirming the judgment of the court below in so far as it concerns the liability of the Employers Mutual Casualty Company and the Central Surety and Insurance Company.