**UNITED STATES of America,**
**Appellant,**

v.

**LEWIS FOOD COMPANY, Inc., Appellee.**

**No. 20194.**

United States Court of Appeals
Ninth Circuit.

Sept. 22, 1966.

Manuel L. Real, U. S. Atty., John K. Van de Kamp, Asst. U. S. Atty., Chief, Crim.Div., Robt. L. Brosio, Asst. U. S. Atty., Asst. Chief, Crim. Div., Burt S. Pines, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

R. Bruce Murchison, Murchison, Cumming, Baker & Velpmen, Wm. Bryan Osborne, Los Angeles, Cal., for appellee.

Before BARNES and HAMLEY, Circuit Judges, and GOODWIN, District Judge.

HAMLEY, Circuit Judge:

This is a criminal prosecution against Lewis Food Company, Inc. (Lewis), for violations of 18 U.S.C. § 610 (1964), a provision of the Federal Corrupt Practices Act. Section 610, among other things, prohibits any corporation or labor organization from making a contribution or expenditure in connection with any election for federal office.

The indictment contains four counts. Count one charges that, in violation of this law, Lewis, a California corporation, paid the Rockett Lauritzen Advertising Agency to place an advertisement in various California newspapers concerning candidates for federal office to be selected in a California primary election on June 5, 1962. This count lists twelve California newspapers in which the advertisement entitled "Important Notice to Voters," was placed on June 4, 1962, at a total cost of $5,509.62.

The remaining three counts duplicate the allegations of count one, except that they cover payments by Lewis for placement of the same advertisement in other named California newspapers. The total expenditures alleged in the four counts is $9,523.68.

Lewis moved to dismiss the indictment on two grounds: (1) the statute upon which the indictment is based is unconstitutional on its face; and (2) the indictment fails to state an offense. The Government then filed a bill of particulars setting out the "Important Notice to Voters." The essential parts are quoted in the margin.[1] The motion to dismiss the indictment was heard and denied by District Judge Albert Lee Stephens. The case then proceeded to a jury trial. The jury was unable to reach a verdict and a mistrial was declared.

Thereafter, the case was reassigned to District Judge C. Nils Tavares. The renewed motion of Lewis to dismiss the indictment was granted by Judge Tavares. Proceeding under the Criminal Appeals Act of 1907 (34 Stat. 1246), as amended, 18 U.S.C. § 3731 (1964), the United States appealed to the Supreme Court of the United States. The Supreme Court remanded the case to this court. United States v. Lewis Food Co., Inc., 381 U.S. 908, 85 S.Ct. 1534, 14 L. Ed.2d 431.

The district court granted the motion to dismiss on the ground that the indictment failed to state an offense, and did not reach the constitutional question. United States v. Lewis Food Co., Inc., D.C.Cal., 236 F.Supp. 849 (1964). The court gave two reasons for holding that the indictment did not state an offense under section 610. The first reason involves two propositions: (1) an expenditure does not come within the purview of the statute unless it is for an activity which constitutes "active electioneering"; and (2) the expenditures here in question do not constitute active electioneering because the advertisement merely states the voting record of the

1. "IMPORTANT
"NOTICE
"TO VOTERS
"If you don't know your candidate, know his voting record. The one sure way to retain our free enterprise system, our constitutional government and freedom under God—vote for the candidates whose voting record indicates that they believe in those principles. If you as voters do not like their voting record, then you have a right and privilege to vote a new candidate in their place, and tell your new candidate what you might expect from him.
"The index below shows the voting record of those who represent you in California and Washington, D.C., now. This index is based on and compiled by the AMERICAN PURPOSE, P.O. Box 73541, Los Angeles 5, Calif., Congressional Rating Index, and shows the percentage of his votes cast in favor of constitutional principles. How to read report—100% is perfect.
[Names and ratings listed]
"Published as a public service by DR. ROSS PET FOOD line * * * Formula 27 dry food, 6 varieties of cat food and 4 flavor Variety Diet. The index is an invaluable guide for the voter who wants to cast his ballot with intelligence and discrimination, in other words, for the voter who wants to know more about the candidates than just their party labels."

candidates "in favor of constitutional principles."

On this appeal the United States does not appear to contest the district court's determination that an expenditure does not come within the purview of the statute unless it is for an activity which constitutes active electioneering. In fact, the Government calls attention to the statement in United States v. International Union United Automobile, Aircraft and Agricultural Implement Workers of America (UAW–CIO) (herein cited as Auto Workers), 352 U.S. 567, 589, 77 S.Ct. 529, 540, 1 L.Ed.2d 563, that:

> "[t]he evil at which Congress has struck in § 313 [now 18 U.S.C. § 610] is the use of corporation or union funds to influence the public at large to vote for a particular candidate or a particular party."[2]

The Government argues, however, that the allegations of the indictment and the content of the "Important Notice to Voters," establish that the advertisement was designed to influence the public at large to vote for a particular candidate, or at least raises a factual issue to be resolved by a jury.[3]

We will assume, without deciding, that expending corporate funds for an advertisement which only publicizes the voting record of candidates for federal office is not active electioneering and therefore is not prohibited by section 610.

We agree with the Government, however, that a jury question was presented as to whether the advertisement in this case went beyond these bounds in that it was designed to influence the public at large to vote for or against particular candidates. A jury could find that the "Notice to Voters" was not intended to give an objective report on the voting record of public office holders. It sets forth only Lewis' appraisal of their undisclosed voting record, expressed in the form of percentage ratings. The "Notice to Voters" also makes it plain that, in Lewis' opinion, those office holders who are given low ratings on their votes "in favor of constitutional principles" should not be re-elected.

We therefore hold that the indictment should not have been dismissed on the ground that, as a matter of law, the expenditures in question were not for an activity which constituted active electioneering.

The second reason stated by the district court for holding that the indictment did not state an offense under section 610, was that it failed to contain what the district court regarded as the essential charge that the expenditures were made from the general funds of the corporation, contrary to the wishes of

---

2. In *Auto Workers*, the Supreme Court found the indictment to be sufficient but remanded the case for trial without disposing of the constitutional issue. One reason the Supreme Court gave for following this course was that " * * * only an adjudication on the merits can provide the concrete factual setting that sharpens the deliberative process especially demanded for constitutional decision." (352 U.S. at 591, 77 S.Ct. at 541)

The Supreme Court in *Auto Workers* gave several examples of the kind of factual questions which might be resolved at the trial, including the following: "Did it [the commercial television broadcast there in question] constitute active electioneering or simply state the record of particular candidates on economic issues?" (352 U.S. at 592, 77 S.Ct. at 542) The district court in our case believed that the Supreme Court was inferring that an expenditure by a labor union or corporation does not come within the purview of the statute if it is not for an activity which constitutes active electioneering but is merely for a publication which states the record of particular candidates on economic issues. The district court also thought that a record of candidates "in favor of constitutional principles," the phrase used in the "Important Notice to Voters," was in the same category as the record of candidates "on economic issues," the phrase used in the *Auto Workers* case.

3. Since both appellant and appellee have assumed that the bill of particulars may be considered in determining whether the indictment states an offense, we will do likewise. See United States v. Boston & Maine Railroad et al., 380 U.S. 157, 159, note 1, 85 S.Ct. 868, 13 L.Ed.2d 728.

an individual stockholder. The indictment charges that Lewis "* * * did unlawfully make an expenditure * *" in connection with the primary election.

The Government concedes that a crucial consideration is whether the corporation's general funds were employed in financing the advertisement.[4] It argues, however, that this is a question of fact to be resolved by a jury, and that an allegation that general funds were used need not be expressly alleged in the indictment.

■ In our opinion, the allegation in the indictment that the corporation made an "expenditure" for the stated purpose, necessarily infers an allegation that general corporate funds were used. Corporate expenditures normally come from a corporation's general funds and not from some independent fund contributed by shareholders or otherwise obtained. It is even questionable whether expenditures from such independent sources would be corporate expenditures at all.

■ All that is required of an indictment is that it be a plain, concise and definite written statement of essential facts constituting the offense charged. Rule 7(c), Federal Rules of Criminal Procedure; Rood v. United States, 8 Cir., 340 F.2d 506, 510. With respect to the use of general corporate funds this indictment meets these requirements. Entry of the plea of not guilty, therefore, gave rise to a question of fact as to the source of the corporate funds. When the Supreme Court, in the *Auto Workers* case, asked (352 U.S. at 592, 77 S.Ct. at 542): "[W]as the broadcast paid for out of the general dues of the union membership or may the funds be fairly said to have been obtained on a voluntary basis?" The Court was referring to questions of fact which must be re-

solved at the trial level and was not referring to any inadequacies in the indictment.

The district court also ruled that the Government failed to make what the district court regarded as the essential allegation that the corporate expenditure was made "contrary to the wishes of an individual stockholder." The Government, however, argues that it is completely immaterial whether or not the shareholders consented to the expenditure.

In United States v. Congress of Industrial Organizations, et al., 335 U.S. 106, 113, 68 S.Ct. 1349, 1353, 92 L.Ed. 1849, the Court stated that one of the two considerations which motivated legislation of this nature was the feeling that corporate officials had no moral right to use corporate funds for contributions to political parties "* * * without the consent of the stockholders."

The district court interpreted such language by the Supreme Court to mean that "[i]f the officers of the corporation do not use funds of the corporation to endorse candidates * * * which may be contrary to the wishes of an individual stockholder * * * such expenditures do not come within the purview of the statute." 236 F.Supp. at 853.

■ The statute itself, however, does not provide an exception when stockholders consent. We are of the opinion that Congress intended to insure against officers proceeding in such matters without obtaining the consent of shareholders by forbidding all such expenditures.[5]

The Supreme Court stated that the other legislative motivation for enactment of legislation such as section 610 was the necessity for destroying the influence over elections which corporations exercised through financial contribu-

---

4. We are therefore not called upon to decide whether, in order to convict, it must be established that general corporate funds were used.

5. Justice Douglas, dissenting in *Auto Workers*, 352 U.S. at 596, 77 S.Ct. at 544, interprets the question asked by the ma-

jority at 592, "* * * was the broadcast paid for out of the general dues of the union membership or may the funds be fairly said to have been obtained on a voluntary basis?" to mean that "[a]ll union expenditures for political discourse are banned because a minority might object."

tions. 335 U.S. at 113, 68 S.Ct. at 1353. This consideration would be meaningless if a corporation could make expenditures for activities otherwise forbidden by section 610 by simply obtaining unanimous consent of its shareholders. In the *Auto Workers* case, the indictment contained no allegation that the expenditure of union funds was contrary to the wish of members. Nevertheless, the Supreme Court found the indictment sufficient.

■ We accordingly hold that the indictment should not have been dismissed for failing to charge that the expenditures were made from the general funds of the corporation, contrary to the wishes of an individual stockholder.

For the reasons stated in the *Auto Workers* case, 352 U.S. 589–592, 77 S.Ct. 540–542, we decline to consider the constitutional validity of section 610 at this time.

Reversed and remanded for further proceedings.