**UNITED STATES of America, Appellee,**

**v.**

**PIPEFITTERS LOCAL UNION NO. 562, etc., et al., Appellants.**

**No. 19466.**

United States Court of Appeals, Eighth Circuit.

Nov. 24, 1970.

Rehearing En Banc Denied Dec. 17, 1970.

Murry L. Randall, St. Louis, Mo., for appellants.

Edgar N. Brown, Atty., U. S. Department of Justice, Washington, D. C., for appellee.

"13. Whether or not the monies contributed to said fund were kept separate and distinct from the funds of Local 562,

"14. Whether or not some persons who worked under the jurisdiction of Local 562 did not contribute to said fund,

"15. Whether or not the monies of said fund were used in part to promote activities which were prohibited to Local 562 by its Constitution and By-Laws,

"16. Whether or not said fund was established and maintained pursuant to the advice of counsel,

"17. Whether or not the monies of said fund were reported to the Department of Labor on the LM-2 forms, which required the reporting monies of Local 562,

"18. Whether or not expenditures from the fund were under the control of the union and its officers,

"19. Whether or not records used in the collection of the payments to the fund are similar to those employed from time to time by the union in the collection of its regular dues and assessments."

Before MATTHES, Chief Judge, and VAN OOSTERHOUT, MEHAFFY, GIBSON, LAY, HEANEY and BRIGHT, Circuit Judges.

PER CURIAM.

On June 8, 1970, the conviction of Pipefitters Local Union No. 562, Lawrence L. Callanan, John L. Lawler and George Seaton on a charge of conspiracy under 18 U.S.C.A. § 371 to violate 18 U.S.C.A. § 610, which makes it unlawful for a labor organization to make a contribution or expenditure in connection with any election to federal office, was affirmed by a panel of this court consisting of Judges Van Oosterhout, Blackmun and Heaney. Judge Heaney filed a dissent. The opinion is reported at 434 F.2d 1116.

Thereafter on August 19, 1970, a rehearing in banc was granted by a majority vote of the active judges of this court and the judgment affirming the conviction was vacated and set aside. The court in banc on October 14, 1970, heard this case.

The judgments of conviction and sentences imposed are affirmed for the reasons set out in the panel majority opinion filed June 8, 1970. Judgment shall be entered accordingly. Affirmed.

MATTHES, Chief Judge, with whom Circuit Judges VAN OOSTERHOUT, MEHAFFY and GIBSON join, concurring.

I join in the affirmance of the judgment of conviction. The course traveled by this appeal in this court, as a result of my brother Heaney's dissenting opinion, motivates me to express my views in regard to procedural aspects of an appeal in the hope that this court, whether sitting en banc or as a panel, hereafter will adhere to what I regard to be deeply entrenched principles applicable to the consideration and disposition of cases by courts of appeals.

From the outset of this case appellants challenged the constitutionality of 18 U.S.C. § 610 and sought dismissal of the indictment on that ground. The validity of the statute was a live issue throughout the trial. Additionally, at trial appellants requested an instruction submitting the issue of voluntariness, and objected to the instruction which made reference to this question. See Footnote 2, Judge Heaney's dissenting opinion, reported at 434 F.2d 1125 (8th Cir. 1970). Thus, there can be no doubt that appellants laid the proper foundation in the district court for challenging on appeal the propriety of the submission of the case to the jury. But appellants, represented by a battery of retained counsel, experienced and skilled in the defense of criminal cases, on appeal abandoned all errors asserted during the trial and elected to proceed in this court by presenting only issues for review designed to bring about an outright reversal and discharge of the appellants.

Appellants' initial exhaustive brief, consisting of 98 pages, stands as irrefutable evidence that they were consciously and purposefully foregoing any relief on the ground of trial irregularities. Manifestly, they were familiar with the provisions of Rule 28(a), Federal Rules of Appellate Procedure, relating to the contents of the brief of an appellant, and included in their brief a "Statement Of Issues Presented For Review." These issues summarized were:

I. The indictment failed to allege an offense under 18 U.S.C. § 610;

II. Section 610 is unconstitutional because it abridged appellants' and all union members First Amendment rights;

III. Section 610 is unconstitutional because of vagueness;

IV. Section 610 deprives unions and their members of liberty and property without due process, in violation of the Fifth Amendment;

V. Section 610, as construed and applied by the district court, unlawfully abridges the rights of appellants to vote and to choose their senators and representatives in Congress as guaranteed by Article I, Section 2 and the Seventeenth Amendment to the Constitution;

VI. The verdict of the jury negating a willful violation of § 610 required an acquittal on the conspiracy charge.

In the expansive development of the foregoing issues in the argument portion of appellants' brief, there is no hint or suggestion of error in giving or rejecting instructions. And to remove any doubt as to the precise relief sought by appellants in this court they concluded their brief with this statement:

### "CONCLUSION.

For each of the reasons stated herein above, we respectfully submit that the judgment below should be reversed. Each of said reasons requires a reversal without a new trial, and no request is made for a new trial. The relief sought, and impelled by said reasons, is a reversal and discharge of the defendants."

The majority of the original panel, which affirmed, squarely met and considered the issues presented by appellants. But, notwithstanding the obvious, namely, that appellants had deliberately and consciously elected to abandon and waive any and all claims of prejudicial trial errors, my brother Heaney, sua sponte, injected an issue foreign to appellants' brief, faulted the district court for not properly instructing the jury as to whether the contributions to candidates had been voluntarily made, and voted to remand for another trial.

The rules designed to govern appellate procedure clearly delineated in the Federal Rules of Appellate Procedure, and sanctioned by many decisions, convinces me that a court of appeals should confine its review to the issues which an appellant properly raises and presents in his brief. Certainly, the reviewing court should not assume the role of an advocate and engage in the practice of ferreting out errors deliberately and consciously abandoned by an appellant, in order to grant relief not asked for, but in fact specifically disclaimed. Such gratuitous procedure by the reviewing court does not, in my view, comport with the proper and orderly administration of justice.

The salutary purpose of Rule 28(a)(2), Federal Rules of Appellate Procedure, providing that the brief of an appellant shall contain "[a] statement of the issues presented for review"[1] and of pre-1968 local rules of this court, has been spelled out in meaningful language. This court, speaking through Judge Kimbrough Stone, stated, "[t]he purpose of the rule is to definitely and separately point out the errors complained of in order to clearly *define* and *confine* the issues on appeal." (Emphasis supplied.) New York Casualty Co. v. Young Men's C. Assn., 119 F.2d 387, 389 (8th Cir. 1941); Accord, Cohen v. United States, 142 F.2d 861, 863 (8th Cir. 1944); Turner County S. D. v. Miller, 170 F.2d 820, 828 (8th Cir. 1948);[2] Mogis v. Lyman-Richey Sand & Gravel Corp., 189 F.2d 130, 133 (8th Cir. 1951);[3] Chain Institute v. Federal Trade Commission, 246 F.2d 231, 235 (8th Cir. 1957); Bell v. United States, 251 F.2d 490, 493–494 (8th Cir. 1958).[4] In McIntosh v. United States, 362 F.2d 636 (8th Cir. 1966), Judge Blackmun, now an Associate Justice of the Supreme Court, reiterated that specifications of error not urged in the brief on appeal are abandoned. Finally, in Smith v. American Guild of Variety Artists, 368 F.2d 511, 514 (8th Cir. 1966), Judge Van Oosterhout again recognized the rule and supported the court's refusal to consider a point not raised or briefed with numerous citations. But see Laclede Gas Co. v. N.L.R.B., 421 F.2d 610 (8th Cir. 1970),[5] where Judges Heaney and

---

1. The Federal Rules of Appellate Procedure became effective July 1, 1968.

2. This case holds that an unargued assertion of error is waived.

3. This case stands for the proposition that contentions of error in the trial court not presented on appeal will be considered as having been abandoned.

4. In the *Bell* case, Judge Van Oosterhout cites numerous cases supporting the rule.

5. This case did not present any constitutional issues.

Lay remanded the case to the National Labor Relations Board for consideration of an issue not raised on appeal. Judge Van Oosterhout dissented on the ground that since the issue was not raised the cause should not be remanded.

I am not unmindful that the United States Supreme Court has established the principle that "[i]f two questions are raised, one of non-unconstitutional and the other of constitutional nature, and a decision of the non-constitutional question would make unnecessary a decision of the constitutional question, the former will be decided." Alma Motor Co. v. Timken-Detroit Axle Co., 329 U.S. 129, 136, 67 S.Ct. 231, 234, 91 L.Ed. 128 (1946); Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 347, 56 S.Ct. 466, 80 L.Ed. 688 (Brandeis, J., concurring); Clay v. Sun Insurance Office, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1959).[6] Nor am I unaware of the practice of the Supreme Court of refusing to decide constitutional questions when other grounds of decision can be found in the *record*, whether or not they have been properly raised before the court by the parties. Neese v. Southern Ry., 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955); Communist Party of United States v. Subversive Activities Control Bd., 367 U.S. 1, 119–120, 81 S.Ct. 1357, 6 L.Ed.2d 625 (1961) (Douglas, J., dissenting).

But, notwithstanding this principle, and with due deference to the teachings of the Supreme Court, the conclusion is inescapable that the practice and procedure in the United States courts of appeals are governed by the Federal Rules of Appellate Procedure.

It is known generally by the federal bench and the members of the legal profession that for a number of years many judges, lawyers and legal scholars recognized a compelling need for uniform rules to govern the practice and procedure in

the United States court of appeals. The Committee on Rules of Practice and Procedure of the Judicial Conference of the United States, after lengthy, responsible and deliberate study and consideration, culminated its efforts, and on December 4, 1967, the Supreme Court of the United States, by appropriate order, adopted the Federal Rules of Appellate Procedure. The Supreme Court, in its order of adoption, provided that these rules are to govern the practice in appeals to United States courts of appeals from the United States district courts, and the review of the United States courts of appeals of decisions of specified lower federal agencies. Rule 1 provides that "these rules govern procedure in appeals to United States courts of appeals from the United States district courts and the Tax Court of the United States; * * *."

Thus, the conclusion is inescapable that the Supreme Court has decreed through adoption of the rules that all appeals in the courts of appeals are to be governed by the provisions of the Federal Rules of Appellate Procedure. These rules are easily understood. They mean what they say. They are binding upon every judge of every court of appeals and should be adhered to, not ignored. If courts of appeals are permitted to engage in fashioning remedies according to the dictates of the judges and contrary to the guidelines enunciated in the rules, one of the objectives so long sought and finally achieved—*uniformity of practice and procedure*—will effectively be scrapped.

HEANEY, Circuit Judge (dissenting).

While I share the view of the majority that the indictment was not fatally defective, I would reverse and remand to the trial court with instructions to it to grant the defendants a new trial. See, United States v. Lewis Food Company, 366 F.2d 710 (9th Cir. 1966).[1] At this

---

6. In *Clay*, Justice Black states that the principle has never been made a rule and elevated to a position of absoluteness but its application is merely discretionary, to be used under the proper circumstances.

363 U.S. at 222–226, 80 S.Ct. 1222 (dissenting opinion).

1. "All that is required of an indictment is that it be a plain, concise and definite

new trial, the principal question would be whether, in the light of all the evidence, the contributions to the federal candidates were made from funds which could fairly be said to have been voluntarily contributed by members and nonmembers with knowledge of the fact that all or part of their contribution would be used for political purposes. See, United States v. International Union, 352 U.S. 567, 592, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957); 93 Cong.Rec. 6437–6440 (1947).

There is evidence in this record indicating that the contributions to the Pipefitters' fund were, in the above sense, knowingly and voluntarily made. There is also substantial evidence to the contrary. But the jury was specifically instructed that it could find the defendants guilty even if it believed all of the contributions were voluntarily made.[2] Such an instruction was, in my view, erroneous.

The government acknowledges in its brief that a union acting through its officers, agents and members may form a political organization parallel to the union and use union personnel to solicit and spend direct voluntary contributions for federal elections. It concedes that COPE and countless other political action groups have been so organized and operated. The difficulty with this acknowledgement is that is comes too late. The trial court, although requested to, refused to give an instruction embodying this concept. Indeed, the thrust of its direction was that the very participation of union officers and agents in the organization and operation of the political fund was evidence of impropriety. Compare, International Ass'n of Machinists v. Street, 367 U.S. 740, 81 S.Ct. 1784, 6 L.Ed.2d 1141 (1961).

The government contends in its brief that the contributions to the fund were in fact assessments, were in fact part of the general dues' structure and were in fact involuntarily made. These may indeed be the facts and if the jury had made such a finding, a violation of Section 610 would have been made out. But again, this the jury was not requested to so find. It was instructed to answer the broader question of whether the contributed funds constituted a part of the Union funds. Nineteen facts and circumstances were listed as bearing on the answer to this question.[3] Some of

---

written statement of essential facts constituting the offense charged. Rule 7(c), Federal Rules of Criminal Procedure; Rood v. United States, 8 Cir., 340 F.2d 506, 510. With respect to the use of general corporate funds this indictment meets these requirements. Entry of the plea of not guilty, therefore, gave rise to a question of fact as to the source of the corporate funds. When the Supreme Court, in the *Auto Workers* case, asked ([United States v. International Union United Auto. etc., Workers] 352 U.S. [567] at 592, 77 S.Ct. [529] at 542 [1 L.Ed.2d 563]): '[W]as the broadcast paid for out of the general dues of the union membership or may the funds be fairly said to have been obtained on a voluntary basis?' The Court was referring to questions of fact which must be resolved at the trial level and was not referring to any inadequacies in the indictment."
United States v. Lewis Food Company, 366 F.2d 710, 713 (9th Cir. 1966).

2. "A great deal of evidence has been introduced on the question of whether the pay-

ments into the Pipefitters Voluntary Political, Educational Legislative, Charity and Defense Fund by members of Local 562 and others working under its jurisdiction were voluntary or involuntary. This evidence is relevant for your consideration, along with all other facts and circumstances in evidence, in determining whether the fund is a union fund. However, the mere fact that the payments into the fund may have been made voluntarily by some or even all of the contributors thereto does not, of itself, mean that the money so paid into the fund was not union money."

3. "1. Whether or not payments to the fund were routinely made at regular intervals at job sites,
"2. Whether or not payments to the fund were routinely collected by union stewards, foremen, area foremen, general foremen, or other agents of the union,
"3. Whether or not the payment to the fund was determined by a formula based upon the amount of hours or overtime hours worked upon a job under the supervision of the union,

the facts and circumstances were relevant to the issue of knowledge and voluntariness and others, irrelevant. One example of the latter was the instruction that the jury could consider whether the payments to the fund were routinely collected by the Union Stewards and agents of the Union at the job site.

The government further contends that the political funds were spent by the individual defendants arbitrarily and without consultation with the contributors. There is some evidence in the record to support this contention. Although such a practice is of questionable legality and is undesirable and undemocratic, it constitutes no violation of Section 610.

The argument is also made by the government that at least one official of the fund diverted a portion of the funds collected for political purposes to his personal use. While this act may also have been illegal and reprehensible, it was not a violation of the statute.

Finally, the government contends on appeal that the fund was used to provide benefits to some of the members of the Union. There is again evidence in the record to support this contention, but the fact of the matter is that the fund was established for educational, legislative, charitable and defense as well as political purposes. And as I read Section 610, there is nothing in it which prohibits a union, its officers and agents from soliciting voluntary contributions for political and other purposes so long as those contributing know that all or part of the funds will be used in support of political candidates.

Nothing I have said in this opinion should be taken to indicate that a union or its officers and agents can evade the prohibitions of Section 610 by obtaining contribution cards from contributors indicating that the contributions were voluntarily made for political purposes. The test is whether the contributions are in fact so made.

It has been and is my opinion that 18 U.S.C. § 610 is clearly unconstitutional if construed as the majority opinion re-

"4. Whether or not payments to the fund were at one rate for 562 members and at a different rate for members of other unions,

"5. Whether or not payments to the fund began, continued and terminated with employment on a job under the jurisdiction of the union,

"6. Whether or not monies of the fund were used to provide benefits to union members in their capacity as members,

"7. Whether or not payments to the fund by members of other unions were in lieu of payments to the union in the form of travel card dues in the amount of eight dollars per month,

"8. Whether or not monies of the fund were used in part to promote activities properly permitted to the union pursuant to Section 2.05 of its Constitution and by-laws,

"9. Whether or not payments to the fund were made by those affiliated with the union to the general exclusion of other classes of persons or organizations,

"10. Whether or not contributions to the fund were required as a condition of employment or continued employment of membership in Local 562,

"11. Whether or not the individuals who contributed to said fund signed a voluntary contribution agreement,

"12. Whether or not the contributions to said fund were made voluntarily or involuntarily,

"13. Whether or not the monies contributed to said fund were kept separate and distinct from the funds of Local 562.

"14. Whether or not some persons who worked under the jurisdiction of Local 562 did not contribute to said fund,

"15. Whether or not the monies of said fund were used in part to promote activities which were prohibited to Local 562 by its Constitution and By-Laws,

"16. Whether or not said fund was established and maintained pursuant to the advice of counsel.

"17. Whether or not the monies of said fund were reported to the Department of Labor on the LM–2 forms, which required the reporting of monies of Local 562,

"18. Whether or not expenditures from the fund were under the control of the union and its officers,

"19. Whether or not records used in the collection of the payments to the funds are similar to those employed from time to time by the union in the collection of its regular dues and assessments."

quires. I am equally convinced, however, that the constitutionality of the statute should not be decided until a conviction is obtained under proper instructions.

On two separate occasions, in the last twenty-five years, the Supreme Court has been asked to decide the constitutionality of § 610. It has declined to do so on both occasions. In United States v. C. I. O., 335 U.S. 106, 68 S.Ct. 1349, 92 L. Ed. 1849 (1948), the defendants were indicted under the statute for activities related to the publication and distribution of their weekly union periodical. The District Court dismissed the indictment, holding the statute to be an unconstitutional impairment of First Amendment rights. The government appealed the District Court's ruling under the Criminal Appeals Act, 18 U.S.C.A. § 682. On appeal, both sides argued the constitutionality of the act. The Supreme Court, however, affirmed the dismissal of the indictment on the grounds, raised *sua sponte,* that the indictment did not charge an offense within the scope of the statute. The majority opinion noted the parties' preoccupation with the constitutional question, but stated:

> "We do not admit any duty in this Court to pass upon such a contention on an appeal under the Criminal Appeals Act except in cases of logical necessity."

*Id.* at 110, 68 S.Ct. at 1351.

Justice Frankfurter, in a concurring opinion, was even more circumspect about deciding the case. He noted, first, Chief Justice Marshall's observation that:

> "No questions can be brought before a judicial tribunal of greater delicacy than those which involve the constitutionality of a legislative act. If they become indispensably necessary to the case, the court must meet and decide them; but if the case may be determined on other points, a just respect for the legislature requires, that the obligation of its laws should not be unnecessarily and wantonly assailed." (Citation omitted.)

*Id.* at 125, 68 S.Ct. at 1359.

Frankfurter went on to argue that the entire case was not ripe for adjudication, concluding that:

> "I cannot escape the conclusion that in a natural eagerness to elicit from this Court a decision at the earliest possible moment, each side was at least unwittingly the ally of the other in bringing before this Court far-reaching questions of constitutionality under circumstances which all the best teachings of this Court admonish us not to entertain.
>
> "But since my brethren find that the case calls for adjudication, I join in the Court's opinion. I do so because of another rule of constitutional adjudication which requires us to give a statute an allowable construction that fairly avoids a constitutional issue."

*Id.* at 129, 68 S.Ct. at 1360.

Nine years later, in United States v. International Union, *supra,* the Supreme Court was, for the second time, asked to decide the constitutionality of § 610. There, the Court was again faced with an appeal from a District Court's dismissal of an indictment charging union violation of § 610. The District Court had held that the indictment did not charge an offense under the statute and, therefore, did not rule on the constitutional questions. A careful study of legislative history of § 610 convinced the Court that the acts charged in the indictment were within the prescriptions of the statute.

The Court, per Justice Frankfurter, then faced the union's contention that:

> " * * * [I]f * * * [the statute] * * * embraces the activity alleged in the indictment, it offends several rights guaranteed by the Constitution."

Justice Frankfurter declined to answer this contention, responding:

> " * * * Once more we are confronted with the duty of being mindful of the conditions under which we may enter upon the delicate process of constitutional adjudication.

"The impressive lesson of history confirms the wisdom of the repeated enunciation, the variously expressed admonition, of self-imposed inhibition against passing on the validity of an Act of Congress 'unless absolutely necessary to a decision of the case.' * * Observance of this principle makes for the minimum tension within our democratic political system where 'Scarcely any * * * become, sooner or later, a subject of judicial debate.'

　　*　　*　　*　　*　　*　　*

"Refusal to anticipate constitutional questions is peculiarly appropriate in the circumstances of this case. First of all, these questions come to us unilluminated by the consideration of a single judge—we are asked to decide them in the first instance. * * * *Finally by remanding the case for trial, it may well be that the Court will not be called upon to pass on the questions now raised.* * * *

"*Counsel are prone to shape litigation, so far as it is within their control, in order to secure comprehensive rulings.* This is true both of counsel for defendants and for the government. Such a desire on their part is not difficult to appreciate. *But the Court has its responsibility. Matter now buried under abstract constitutional issues may, by the elucidation of a trial, be brought to the surface, and in the outcome constitutional questions may disappear.*" (Citations omitted and emphasis added.)

*Id.* .352 U.S. at 590–592, 77 S.Ct. at 540–542.

In spite of the Supreme Court's obvious reluctance to decide the constitutionality of § 610, as well as other legislative acts,[4] until absolutely necessary, our Court today rushes to do just that. My brother Matthes defends the action of the Court by arguing that the Courts of Appeals are rigidly bound to the literal wording of Rule 28(a) (2).

Rule 28(a) (2), which states in part that the brief of appellant shall contain "[a] statement of the issues presented for review," was primarily designed to clarify counsel's presentation of an appeal as well as to lighten the labors of the court. Thys Company v. Anglo California National Bank, 219 F.2d 131 (9th Cir.), cert. denied, 349 U.S. 946, 75 S.Ct. 875, 99 L.Ed. 1272 (1955); Iva Ikuko Toguri D'Aquino v. United States, 192 F.2d 338 (9th Cir. 1951). It was not designed to permit counsel to manipulate this Court to their own interest or to prevent this Court from meeting its responsibility. See, United States v. International Union, *supra*; United States v. C. I. O., *supra*.

I recognize, as Justice Black enunciated in Clay v. Sun Insurance Office, 363 U.S. 207, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1960), that avoidance of constitutional questions is discretionary and should be used only under the proper circumstances. I can conceive of no circumstances more appropriate than those in this case. The minority's decision would remand the case to the District Court for trial under appropriate and proper instructions. It is possible that under such instructions, our Court will not be called upon to judge this Congressional act.

The Supreme Court's Rule 23(1) (c)[5] is similar, in scope and purpose, to our Rule 28(a) (2). Yet the Supreme Court has not felt the need to religiously follow this general rule in the face of other

---

4. See, *e. g.*, Mackey v. Mendoza-Martinez, 362 U.S. 384, 80 S.Ct. 785, 4 L.Ed.2d 812 (1960); Alma Motor Co. v. Timken-Detroit Axle Co., 329 U.S. 129, 80 S.Ct. 1222, 4 L.Ed.2d 1170 (1946).

5. "*Rule 23. The petition for certiorari*
"1. The petition for writ of certiorari shall contain in the order here indicated—

　　*　　*　　*　　*　　*

"(c) The questions presented for review, expressed in the terms and circumstances of the case but without unnecessary detail. The statement of a question presented will be deemed to include every subsidiary question fairly comprised therein. Only the questions set forth in the petition or fairly comprised therein will be considered by the court."

important policy considerations.[6] Nor have the appellate courts followed their own rule as strictly as Chief Judge Matthes would have us do. See, *e. g.*, Platis v. United States, 409 F.2d 1009 (10th Cir. 1969); United States v. O'Connor, 291 F.2d 520 (2nd Cir. 1961); General Finance Loan Co. v. General Loan Co., 163 F.2d 709 (8th Cir. 1947).

Rule 28(a) (2) was intended to serve the Court, not to hamstring it. Long held notions of constitutional adjudication advise us to remand this case for a new trial with proper instructions. We should do so.

Judges LAY and BRIGHT have authorized me to state that they join in this dissenting opinion, and I join in Judge LAY's dissent.

LAY, Circuit Judge (dissenting).

I would reverse the judgment below and remand for a new trial for the reasons set forth in JUDGE HEANEY's dissenting opinion. I direct myself to the procedural question discussed in the concurring opinion.

First, I disagree with the majority that the trial court's instruction was not attacked as error by the defendants in their original briefs on appeal. Second, this court set aside the original submission of the appeal and directed anew the parties to file supplemental briefs for the benefit of the court en banc. The defendants specifically question the propriety of the instruction in their supplemental brief and the government did not raise the issue of abandonment or noncompliance with the Federal Rules of Appellate Procedure. Third, it is an equally "deeply entrenched principle" that in the public interest and to guard against manifest injustice this court will notice errors not properly raised for review, if such errors are obvious or otherwise seriously affect the fairness and integrity of the judicial proceeding.

There exists a fundamental discrepancy in the concurring opinion's restatement of the constitutional issues as raised by the defendants. The First Amendment issue is there stated to be:

"Section 610 is unconstitutional because it abridged appellants' and all union members First Amendment rights."

However, the proposition stated in defendants' original brief is fashioned not as an abstraction but as a justiciable issue:

"Section 610, Title 18, U.S.C. *as construed and applied by the Court below*, abridges the defendants' rights as well as the rights of all union members, of freedom of speech, press and assembly and the right to petition the Government for redress of grievances, in violation of the First Amendment of the Constitution of the United States." (My emphasis.)

The justiciable controversy is the application of § 610 *"as construed and applied by the Court below."* (My emphasis.) The district court's instruction to the jurors informed them the law of the case as it was actually tried. The district court instructed the jury: "[T]he mere fact that the payments into the fund may have been made voluntarily by some or even all of the contributors thereto does not, of itself, mean that the money so paid into the fund was not union money." The defendants' 98 page attack is explicitly *directed to this construction* of Section 610. To now urge that the district court's instruction is not raised as error by the defendants on appeal is to ignore the heart of the matter being litigated. Cf. Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949).

6. This point is persuasively demonstrated by Chief Justice Warren's dissent in Communist Party v. S.A.C. Board, 367 U.S. 115, 119–121, 81 S.Ct. 1357, 6 L.Ed. 2d 625 (1961). The majority's failure to consider the issue urged there is not controlling in this case because of significant and material differences in the procedural postures of the two cases. At most, *Communist Party* was a case in which Justice Black's notion of using discretion in avoiding constitutional questions led to a result opposite of that here.

It approaches appellate review in the celestial light of abstractness.

To follow the logic of the majority's theory of abandonment does more than to shackle the appellate process to whatever narrow remedy might be sought by a party. It refuses as well any consideration of the broad congressional power given to this court under 28 U.S.C.A. § 2106,[1] and requires us to determine troublesome constitutional issues raised not by the congressional intent or enactment but by reason of the district court's narrow interpretation of the statute.

We should not pass upon the issue of the constitutionality of § 610 when it is not properly before us. The district court failed to instruct the jury that voluntary contributions to the fund are not within the scope of the statute. The statute does not and cannot proscribe use of voluntary funds. United States v. International Union United Auto. etc., Workers, 352 U.S. 567, 592, 77 S.Ct. 529, 1 L.Ed.2d 563 (1957); United States v. C. I. O., 335 U.S. 106, 123, 68 S. Ct. 1349, 92 L.Ed. 1849 (1948). Not until the statute is given its intended construction should we weigh the constitutional issues presented. As the concurring opinion authoritatively concedes, constitutional validity of legislative action should not be passed upon until the conflict is unavoidable. See also Thorpe v. Housing Authority, 393 U.S. 268, 284, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969); Rosenberg v. Fleuti, 374 U.S. 449, 451, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963). As this writer observed in In re Weitzman, 426 F.2d 439, 454–455 (8 Cir. 1970), "the abandoning of a valid claim on appeal cannot dictate to the court when it must reach a constitutional issue." Thus, the majority, under the guise of allegiance to rules of procedure, admittedly setting aside well established principles of constitutional construction, must, because the parties so shaped the question, meet constitutional issues headon. As the concurring opinion concedes, this is simply not good policy, nor should it be.

The majority opinion upholds the constitutionality of § 610. It does so without reference to the facts of the case, since the basis of the opinion completely disregards the district court's narrow and erroneous construction of the statute. In doing so, it overlooks that the defendants were convicted under the erroneous, and in my judgment, unconstitutional, application of the statute as encompassing funds voluntarily paid by union members for political activity. The majority justify their decision because they say the instruction itself is not attacked on appeal. The defendants' original brief belies this statement. The instruction is expressly attacked and defendants' counsel repeatedly and specifically explain the basis of the attack.[2]

---

I. Section 2106 reads:

"The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

2. The instruction is set out on page 37 of defendants' brief. Defendants' brief argues:

"The Court also instructed that (A. p. 1116) : 'the mere fact that the payments into the fund may have been made voluntarily by some or even all of the contributors thereto does not, of itself, mean that the money so paid into the fund was not union money.'" p. 37.

"The Court below construed Section 610 as prohibiting officers, agents and members of a union from forming a parallel political organization and utilizing the union leaders, officers and agents in such political organization, in the obtaining, pooling and expending of direct voluntary contributions for political purposes." p. 59.

"The statute as construed denies individual rights of voluntary association for it forbids working men to associate and act through their labor leaders in the political field to protect their collective rights. This includes both their rights as union members and the rights of the union which they have joined. Even though the choice of candidates may determine whether those rights will be secured or destroyed, the statute as

In essence, what the majority is saying is that although the district court's erroneous construction of the statute is raised on appeal, the defendants failed to ask for the right relief or remedy (a new trial), as a consequence of which the judgment must be affirmed. The federal rules governing procedure were never intended to punish a party for failure to seek the proper relief.[3] Decisions are replete holding that a court of appeals may shape the remedy regardless of the relief sought.[4] Section 2106 is authority and index to these decisions. See Neely

construed, prohibits union members from protecting and advancing those rights." p. 65.

" * * * The Court instructed the jury that it could find that a separate voluntary political fund was in fact a union fund by any and all circumstances in evidence (A. pp. 1112–1115).

"This interpretation was made by the court despite the legislative history to the effect that a separate voluntary fund, such as the one here, is excluded from the criminal sanctions of Section 610 and without any judicial support or any prior prosecution (See Argument I, *supra*). Thus, as applied and interpreted by the lower court, Section 610 is unconstitutionally vague as it failed to give defendants fair warning of its scope and was a retroactive, unforeseeable judicial enlargement of the statute.

"Such a fortuitous judicial construction, analogous to legislative *ex post facto*, intensifies the vagueness of the statute and is even more so inimical to due process than if the statute is merely vague on its face." pp. 68–69.

"As such, the statute, as constructed by the district court, totally inhibits the fundamental freedoms of expression, assembly and petition guaranteed by the First Amendment (See *Argument II*, *supra*). Where a statute operates to restrain protected First Amendment freedoms, stricter standards of permissible statutory vagueness are to be applied." p. 72.

3. This application of the rules violates the spirit and letter of the rules themselves. Compare Rule 54(c) of Fed.R.Civ.P., which reads in part: "[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, *even if the party has not demanded such relief in his pleadings.*" (My emphasis.)

4. Compare Turk v. United States, 429 F.2d 1327 (8 Cir. 1970), an opinion in which Chief Judge Matthes joined, where because of insufficient evidence to justify an arrest and search we vacated a judgment of conviction, but remanded *sua sponte* for an evidentiary hearing on probable cause.

This court's recent remand in Laclede Gas Co. v. NLRB, 421 F.2d 610 (8 Cir. 1970), is viewed with jaundiced eye in the concurring opinion. It should be stated that a vigorous petition for a rehearing en banc was filed in that case. Not a single judge requested a vote for an en banc hearing and the petition was denied. Additionally unrecalled is the existence of compelling authority and reason for a court of appeals to remand to the National Labor Relations Board under such circumstances. See e. g., Nuelsen v. Sorensen, 293 F.2d 454, 462 (9 Cir. 1961), where the court said:

"Yet none of these theories were advanced in appellant's pleadings, stated as issues in the pre-trial order, presented in the trial court, or dealt with in the briefs on appeal. This court has refused to reverse on a ground not argued in the trial court. United States v. Waechter, 9 Cir., 195 F.2d 963.

"This accords with the general rule that an appellate court will not consider sua sponte arguments not presented or urged by the litigants. This restraint is essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues which the trial forum is to decide and in order that the litigants not be surprised on appeal by final decision there of issues upon which they have had no opportunity to introduce evidence. Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037.

"*There is, however, no rigid and undeviating judicially declared practice under which courts of review invariably and under all circumstances decline to consider all questions which have not previously been specifically urged. Indeed there could not be without doing violence to the statutes which give federal appellate courts the power to modify, reverse or remand decisions 'as may be just under the circumstances.' 28 U.S.C.A. § 2106. Exceptional cases or particular circumstances may prompt a reviewing court, where injustice might otherwise result or where public policy requires, to consider questions neither pressed nor passed upon below. The power to raise and decide questions sua*

v. Martin K. Eby Constr. Co., 386 U.S. 317, 87 S.Ct. 1072, 18 L.Ed.2d 75 (1967).[5] FRAP is not concerned with *how* the issue is raised, but *what* is raised. To reason that a defendant is to be deprived of any relief from an erroneous conviction merely because he names the wrong remedy on appeal is reminiscent of the rigid and rationalized distinctions from the days of code pleading.[6]

Assuming *arguendo* merit to the majority's view in the context of the original briefs, I add an additional word of concern. On August 19, 1970, this court ordered the panel's original judgment to be vacated and to have the case resubmitted to the court en banc. The clerk of the court was then directed to notify the parties that they could submit supplemental briefs. On September 10, 1970, Mr. Tucker wrote the parties:

"Reference is made to the Court's order of August 19, 1970, vacating our previous judgment and reinstating the case on our calendar. I am directed by the Court to inform counsel that this appeal is to be submitted to the Court en banc on Wednesday, October 14, 1970, at 9 a. m.

"Counsel for appellants may have to and including September 22, 1970, in which to file any additional briefs thought appropriate and counsel for appellee, United States, may have to and including October 1, 1970, in which to file additional brief.

"Any subsequent briefs may be in typewritten form on lettersize paper

and fastened in the left margin. I will need an original and seven copies of typewritten briefs which should, of course, be served on opposing counsel."

On September 17, 1970, the defendants submitted a supplemental brief requesting in the alternative a new trial, for the reason that:

"The Court below erred in instructing the jury that it could find the defendants guilty even if it believed all of the contributions to the Political Fund were voluntarily made."

On September 29, 1970, the government responded solely to that proposition. Ironically, it is not the government that first raises the question of violation of the Federal Rules of Appellate Procedure.

The concurring opinion construes the Federal Rules of Appellate Procedure as inflexibly barring this court's consideration of the erroneous instruction. Assuming solely for the sake of argument that one could reasonably say that the defendants did not properly attack the court's construction of the statute on appeal, the concurring opinion overlooks another "deeply entrenched principle" followed by this circuit. Senior Judge Vogel, when Chief Judge of this court, said in Harris v. Smith, 372 F.2d 806, 815 (8 Cir. 1967), "An additional ground of error, *although not urged on appeal,* should be noticed by this court because of its substantial effect upon the rights of the parties." (My emphasis.) Judge Vogel quoted from General Finance Loan Co. v. General Loan Co., 163 F.2d 709,

---

*sponte is, however, to be exercised sparingly and with full realization of the restrictions and limitations inherent in its employment.*

"Rather than consider the matter sua sponte, of course, the appellate court may note the existence of the unargued, undecided question and remand the case to the lower court. This makes the decision on the matter one reflecting the consideration of a trial court and the counsel in the case.

"In our opinion justice requires that such a course be followed in this case." (My emphasis.)

5. In *Neely* the court of appeals had granted a judgment n. o. v. Although a motion

for new trial was not presented by the verdict-holder on appeal nor by a petition for rehearing, the Supreme Court stated that "It was, of course, *incumbent* on the Court of Appeals to consider the new trial question in the light of its own experience with the case. But we will not assume that the court ignored its duty in this respect, although *it would have been better had its opinion expressly dealt with the new trial question.*" 386 U.S. at 329–330, 87 S.Ct. at 1080. (My emphasis.)

6. This recalls to mind Maitland's aphorism that "the forms of action we have buried, but they still rule us from their graves." Maitland, The Forms of Action at Common Law 296 (1909).

711 (8 Cir. 1947), where the late Judge Thomas observed:

> " 'We may, however, in our discretion consider a plain error apparent on the face of the record for the purpose of avoiding a manifest miscarriage of justice, or where the issue raised is one of public concern, even in a civil case. Kincade v. Mikles, 8 Cir., 144 F.2d 784; National Aluminate Corporation v. Permutit Co., 8 Cir., 144 F.2d 93.' "

And we said in Lewis v. United States, 340 F.2d 678, 683 (8 Cir. 1965), " 'it (is) our duty to correct clear error' where shown to exist." See also Harris v. United States, 297 F.2d 491, 492 (8 Cir. 1961); Page v. United States, 282 F.2d 807, 810 (8 Cir. 1960); United States v. 353 Cases, Etc., 247 F.2d 473, 477 (8 Cir. 1957); Cave v. United States, 159 F.2d 464, 469 (8 Cir. 1947), cert. denied 331 U.S. 847, 67 S.Ct. 1732, 91 L.Ed. 1856, rehearing denied 332 U.S. 786, 68 S.Ct. 34, 92 L.Ed. 369. The concurring opinion's inflexible approach to appellate review is contrary to the view taken not only by this circuit, but by all other courts of appeals. In United States v. Achilli, 234 F.2d 797, 809 (7 Cir. 1956), aff'd 353 U.S. 373, 77 S.Ct. 995, 1 L.Ed.2d 918 (1957), the court said: "Rule 52(b) was designed to reach errors of such a substantial nature that they would, if not corrected, result in a manifest miscarriage of justice. [citing authority.] Inasmuch as errors within the comprehension of the provisions of this rule are those of such a nature that they must be corrected to prevent a manifest injustice, it is incumbent upon a reviewing court to notice such error *sua sponte* although the issue presented *is not raised on appeal.*" (My emphasis.) In Forakis v. United States, 137 F.2d 581, 582 (10 Cir. 1943), the Court of Appeals for the Tenth Circuit observed: "That general rule [errors not preserved are not reviewable on appeal] bears the well recognized exception that where life or

liberty is involved, an appellate court may notice and correct serious errors which were fatal to the rights of the accused even though they were not challenged or reserved." In Gros v. United States, 136 F.2d 878, 880–881 (9 Cir. 1943), reversed on rehearing 138 F.2d 261, the principle is similarly expressed: "It is obvious that it is immaterial in a court of justice whether the court sua sponte first recognizes and calls attention to a plain error 'absolutely vital to defendants' and that appellant's counsel then urges it, or that counsel first calls the appellate court's attention to the vital error." See also Fisher v. United States, 328 U.S. 463, 467–468, 66 S.Ct. 1318, 90 L.Ed. 1382 (1946); Screws v. United States, 325 U.S. 91, 107, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945); Reisman v. United States, 409 F.2d 789, 791 (9 Cir. 1969); McMillan v. New Jersey, 408 F.2d 1375, 1377 n. 7 (3 Cir. 1969); Garza-Fuentes v. United States, 400 F.2d 219, 223 (5 Cir. 1968), cert. denied 394 U.S. 963, 89 S.Ct. 1311, 22 L.Ed.2d 563 (1969); Stephan v. United States, 133 F.2d 87, 89–90 (6 Cir. 1943), cert. denied 318 U.S. 781, 63 S.Ct. 858, 87 L.Ed. 1148 (1943).

I cannot judicially accept the reasoning that manifest injustice may take place in a criminal trial and yet lay beyond the reach of appellate review because a lawyer inadvertently failed to protect the defendant's rights in an appellate brief. There should exist no talismanic phrases to excite an appellate judge to recognize a miscarriage of justice in a criminal appeal. For an appeals judge to take effective action in these circumstances, even where counsel fails to properly preserve the error, is not advocacy, but rather an urgent and necessary exercise of judicial responsibility. If this be proscribed as advocacy, the breadth and meaning of judicial review would have been rendered meaningless long ago. See generally Cardozo, The Growth of the Law (1924).[7]

---

7. In this work Mr. Justice Cardozo, while on the New York Court of Appeals, observed:

"Every decision, where the judicial process is creative, and not merely static or declaratory, is a reflection of the prob-

As the Supreme Court has observed:

"Rules of practice and procedure are devised to promote the ends of justice, not to defeat them. A rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with this policy. Orderly rules of procedure do not require sacrifice of the rules fundamental justice." Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941).[8]

I am authorized to say that Judge HEANEY and Judge BRIGHT concur in this opinion.

lem and an expression of the answer. The philosophy may be inconsistent or unsound or distorted. The answers will share the vice, and be perverse or unwise or contradictory. The problem is always present. We shall not find the solution by acting as if there were nothing to be solved." At 27.

8. Mr. Justice Cardozo also reflected:

"The passing years have not brought to me the gift of wisdom, but they have at least opened my eyes to the perception that distinctions which in those early days seemed sharp and obvious are in truth 'shadowy and blurred, the walls of the compartments in no wise water-tight or rigid." Cardozo, supra n. 7 at 36.