# MACKEY, COMMISSIONER OF IMMIGRATION AND NATURALIZATION, ET AL. v. MENDOZA-MARTINEZ.

No. 29. Argued November 10, 1959.—Decided April 18, 1960.

*Oscar H. Davis* argued the cause for appellants. With him on the brief were *Solicitor General Rankin* and *Assistant Attorney General Wilkey.*

*Thomas R. Davis* argued the cause for appellee. With him on the brief were *John W. Willis* and *Vincent P. DiGiorgio.*

*Jack Wasserman, David Carliner* and *Osmond K. Fraenkel* filed a brief for the American Civil Liberties Union, as *amicus curiae,* in support of appellee.

PER CURIAM.

This is a suit by appellee for a declaratory judgment that he is a citizen of the United States. The District Court sustained the contention of the United States that appellee had lost his citizenship by reason of § 401 (j) [1]

---

[1] Section 401 (j) reads as follows:

"A person who is a national of the United States, whether by birth or naturalization, shall lose his nationality by:

. . . . .

"(j) Departing from or remaining outside of the jurisdiction of

of the Nationality Act of 1940, 54 Stat. 1137, as amended, 58 Stat. 746, 8 U. S. C. § 1481 (a)(10), and the Court of Appeals affirmed. 238 F. 2d 239. Meanwhile we had decided *Trop* v. *Dulles,* 356 U. S. 86; and when certiorari was sought here we granted the petition and remanded the cause to the District Court for reconsideration in light of that decision. 356 U. S. 258. On remand the District Court held that § 401 (j) was unconstitutional. The case is here on direct appeal (28 U. S. C. § 1252) from the judgment of the District Court holding that appellee is therefore a citizen of the United States. We noted probable jurisdiction. 359 U. S. 933.

After the case was argued the Court, *sua sponte,* put to the parties the following questions based on appellee's conviction for draft evasion: [2]

"(1) Was the judgment of conviction of appellee for draft evasion premised in any respect upon his

the United States in time of war or during a period declared by the President to be a period of national emergency for the purpose of evading or avoiding training and service in the land or naval forces of the United States."

[2] The facts stipulated in the present case and relevant to that conviction are:

"III. Plaintiff was born in the United States on March 3, 1922, and thus was a citizen of the United States at birth.

"IV. Under the laws of Mexico plaintiff is now, and ever since his birth has been, a citizen and national of the Republic of Mexico.

"V. During 1942 plaintiff departed from the United States and went to Mexico for the sole purpose of evading and avoiding training and service in the Armed Forces of the United States.

"VI. Plaintiff remained in Mexico continuously from sometime during 1942 until on or about November 1, 1946 for the sole purpose of evading and avoiding training and service in the Armed Forces of the United States.

"VII. On June 23, 1947, plaintiff upon his plea of guilty was convicted in the United States District Court for the Southern District of California for violation of Section 11 of the Selective Service and Training Act of 1940. He was sentenced to imprisonment for a period of one year and one day."

citizenship status after the date of enactment of Section 401 (j)?

"(2) If so, does the judgment of conviction for any reason foreclose litigation of the appellee's citizenship in the present case?

"(3) Are the foregoing questions appropriate for the Court's consideration?"

The parties have filed supplemental briefs and from them it appears that the offense charged, and to which appellee pleaded guilty, was departing from the United States November 15, 1942, to evade service in the Armed Forces and remaining away until November 1, 1946. The statute under which he was convicted placed the duty of service on "every male citizen of the United States, and of every other male person residing in the United States." 54 Stat. 885, as amended, 55 Stat. 844, 50 U. S. C. App. 303 (a) (1940 ed. Supp. I).

Appellee contends that while that Act requires service of aliens residing here, it is inapplicable to nonresident aliens; and that therefore the charge in the indictment that appellee remained away could be applicable only if appellee were a citizen. Indeed the facts stipulated in the present case state that he was a citizen by birth. It follows, appellee argues, that the judgment of conviction for draft violation necessarily included an adjudication of citizenship, and that that judgment brings into play the doctrine of collateral estoppel (*Washington Packet Co.* v. *Sickles,* 5 Wall. 580; *Emich Motors Corp.* v. *General Motors Corp.,* 340 U. S. 558) since the conviction of draft evasion was subsequent to September 27, 1944, the date of the enactment of § 401 (j). The Solicitor General argues, *inter alia,* that the issue of citizenship was not necessarily involved in the conviction for draft evasion since a charge of evasion by an alien would be made out even though he had left the country provided the duty to serve had attached when he resided here. The Solicitor

General suggests, however, that the avoidance of a constitutional issue when not clearly necessary and the importance of citizenship to the appellee are important factors to be considered in disposing of the case. He is of the view that "there is so little ground for saying that appellee's citizenship status has already been definitively decided, we believe that this issue should not and need not be canvassed by the Court." Yet with his customary candor the Solicitor General says, "But if the Court should be convinced on this record that appellee's citizenship was authoritatively determined in his favor in the 1947 criminal proceeding, we would not oppose a resolution of the case on that basis."

The issue of collateral estoppel is a question that clouds the underlying issue of constitutionality. Since the issue of collateral estoppel may be dispositive of the case, we remand the cause to the District Court with permission to the parties to amend the pleadings, if they so desire, to put in issue the question of collateral estoppel and to obtain an adjudication upon it.

*It is so ordered.*

Separate memorandum of MR. JUSTICE FRANKFURTER.

The Solicitor General's acquiescence in having this case disposed of by avoiding decision of the important constitutional question concerning the validity of § 401 (j) of the Nationality Act of 1940, which is the only one presented by the record, probably reflects an understandable desire on the part of the Government to have this Court adjudicate that issue unembarrassed by an extraneous problem that did not come to the surface until this appeal had been submitted. I do not think that this new matter—a claim of collateral estoppel—should be considered here as though this were a court of first instance. No matter how sympathetic one may be towards liberalization of pleading and informality in judicial proceedings,

the intrinsic demands of orderliness in the judicial process require that the issues on which this Court is to render judgment should be appropriately defined through pleadings and proceedings in the lower courts and not be initially shaped for adjudication in this Court. Apart from all else, since taking testimony before this Court has long since ceased to be feasible, we would necessarily have to act on the merits of a claim, based on the rather opaque law of collateral estoppel, resting on documentary submissions not subject to the test of testimonial examination.

I am prepared, therefore, to accede to the Solicitor General's suggestion, but to do so by wiping the slate clean. This calls for an appropriate order vacating the proceedings in this Court and in the District Court for the Southern District of California as well as the deportation proceedings which derived from a finding that the appellee has lost his citizenship by reason of § 401 (j) of the Nationality Act, a conclusion which is the very issue in controversy. I would do so without summarizing the positions of the parties on the claim of collateral estoppel which is not relevantly before us on this record, and, above all, without any intimation regarding the seriousness of such a claim.

MR. JUSTICE CLARK, whom MR. JUSTICE HARLAN and MR. JUSTICE WHITTAKER join, dissenting.

This case having now been in the courts for some six years, we think that proper judicial administration would require the Court to decide the question of collateral estoppel, raised belatedly and *sua sponte*. As we see it, if the Court can raise that issue here, certainly we can decide it without the additional delay of having the parties go through the motions of amending the pleadings, as suggested. The Court could then pass upon the constitutional issue and advise the Congress of its power in this important field, in which it legislated some 16 years ago.