Donald Edward ALLEN, Appellant,

v.

Louis S. AYTCH, Individually and as Superintendent or Director of Philadelphia County Prisons, et al.

No. 75–1924.

United States Court of Appeals, Third Circuit.

Argued Feb. 24, 1976.

Decided April 29, 1976.

Bruce C. Lee, law student, Jack J. Levine, Supervising Atty., Philadelphia, Pa., for appellant.

James M. Penny, Jr., Asst. City Sol., Raymond Kitty, Deputy City Sol., Sheldon L. Albert, City Sol., Philadelphia, Pa., for appellees.

Before ADAMS, HUNTER and GARTH, Circuit Judges.

## OPINION OF THE COURT

ADAMS, Circuit Judge.

The number of civil rights complaints filed annually in federal court by prisoners has been increasing dramatically in recent years.[1]  One such complaint, drafted by Donald Edward Allen to challenge certain rules regarding a prison commissary and transmitted to the Clerk of the United States District Court, is alleged by its author to have been removed from its envelope and read by prison officials before it was forwarded to the court.  As a result, Allen amended the complaint by adding the only charge that is now before us: that the opening of the envelope and the reading of

---

1. In 1975, there were 6,128 such complaints filed, 17% more than the number filed only one year earlier and three times the number filed in 1970.  As recently as 1966, only 218 had been filed.  Administrative Office of the U. S. Courts, 1975 Annual Report of the Director XI–49 (Table 24) (1975).

the complaint violated his constitutional rights. We are asked by the parties to determine, assuming that the factual allegations are true, whether Allen's constitutional rights were so abridged.

Because of the existence of nonconstitutional grounds that may entitle Allen to the relief he seeks, we decline to reach the constitutional question, and instead remand to the district court for further proceedings.

## I.

Allen was transferred from Lewisburg Federal Penitentiary to the Philadelphia Detention Center on March 15, 1974, in order to appear at a habeas corpus hearing that was scheduled for March 19. After Allen's arrival in Philadelphia, the hearing was postponed until April 2. At Allen's request, he was authorized to remain in the Detention Center until April 2, rather than be returned to Lewisburg.

Shortly after his arrival at the Detention Center, Allen experienced difficulty in purchasing stamps and envelopes at the prison commissary because of rules relating to the expenditure of personal funds by prisoners. In order to challenge these rules, Allen drafted a civil rights complaint which he intended to file in federal court. He placed the complaint in an envelope, addressed the envelope to the Clerk of the United States District Court for the Eastern District of Pennsylvania, and sealed the envelope. Because Allen did not have sufficient postage to mail the complaint, he delivered it on March 26 to the social service secretary of the Detention Center for mailing. The complaint did not arrive at the office of the Clerk of the District Court until eight days after Allen had taken it to the social service secretary.

The complaint was subsequently amended to allege that Edward Forman, the warden of the Detention Center, had read the original complaint before it was mailed to the

federal court. Allen claimed that the opening of the envelope and the reading of the complaint violated his first amendment right of freedom of speech and his fourteenth amendment right of reasonable access to the courts.[2] He sought declaratory and injunctive relief, as well as damages.

During the trial, held before the district court sitting without a jury, it was revealed that Allen had had a conversation with Forman on March 29, three days after the envelope containing the original complaint had been given to the social service secretary. Allen testified that he had protested to Forman at that time about conditions at the Detention Center, and had stated that he had already filed one civil rights complaint against the Detention Center. According to Allen, Forman had responded by saying that he knew about the complaint Allen had sent to the federal court, and had already read it. Forman, however, testified that he made no such statement to Allen, added that he had no knowledge of Allen's civil rights complaint at the time of the March 29 conversation, and denied that he had read the complaint before it was mailed to the district court.

The district court made findings of fact and conclusions of law, but did not consider it necessary to resolve the factual dispute between Allen and Forman concerning whether Forman had opened the envelope and read the complaint drafted by Allen. In the view of the district court, none of Allen's constitutional or other federal rights had been infringed, even assuming Forman had opened the envelope, taken the complaint out of it, and read the complaint.

In this regard, the district court relied on *Wolff v. McDonnell*[3] for two propositions: (1) the mere opening of mail by prison officials does not violate the prisoner's first amendment rights, and (2) the fourteenth amendment right of access to the courts had not been extended to ensure more than

2. The amended complaint also retained the challenges to the Detention Center's commissary rules that had been included in the original complaint. Only the claim regarding the opening and reading of Allen's court-addressed mail

has been brought to this Court in the present appeal, however.

3. 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

the ability to prepare a petition or complaint.[4] In the alternative, the district court held that inspection of outgoing mail by prison authorities, as opposed to censorship of it, does not infringe a prisoner's constitutional rights in any event, even if the mail is addressed to a court.[5] Judgment was entered by the district court for the defendants.

Allen attacks the result reached by the district court on several grounds. He contends that the reading of his court-addressed mail transgressed his first amendment rights because it did not further a substantial governmental interest unrelated to the suppression of expression and was not the least restrictive means of protecting any governmental interest in reading his mail. He also claims that the possibility that an inmate who mails a civil rights complaint to the federal court will be subjected to punishment or retaliation chills his right to petition the government for redress of grievances, and requires a prohibition against any interference with outgoing court-addressed correspondence. Moving from his claim under the first amendment, Allen argues that the opening of the envelope and the reading of his mail also violated his fourteenth amendment right of access to the courts.

Finally, Allen presents an argument based upon two nonconstitutional rights. He contends that a contract existing between the federal Bureau of Prisons and the City of Philadelphia restricts the authority of the prison officials to open his court-addressed mail. He additionally asserts that the defendants' actions are prohibited by the handbook of the Philadelphia prison system. Allen urges this Court to rely upon the contract and the handbook as an alternative ground for reversing the judgment of the district court.[6]

The prison officials suggest two sets of reasons for affirmance. The first is, essentially, that decisions regarding the functioning of a prison should be left to the prison administration. According to the defendants, the courts have traditionally deferred to the judgment of prison administrators on matters relating to the treatment of prisoners, and there is a need to monitor both incoming and outgoing mail in the prison environment. Secondly, the prison administrators claim that Allen has alleged only a mere subjective chilling of his constitutional rights under the first and fourteenth amendments, and, therefore, has not stated a claim upon which relief may be granted.

## II.

Allen asserted in his amended complaint that the opening and reading of his mail by the defendants had encroached upon his right of access to the courts and his right to freedom of speech. In his brief filed in this Court, Allen has argued for the first time that the defendants' conduct also violated a contract signed by the City of Philadelphia, governing the custody of federal prisoners in its prisons, and the published policies of the Philadelphia prison system.

### A.

It is well established that federal courts will not pass upon a constitutional question if the issue presented in a case may be adjudicated on a nonconstitutional ground.[7] That is also true where, as here, the nonconstitutional basis for the decision was neither raised in the pleadings nor

---

**4.** The district court also ruled that Allen's fourth amendment rights, which were not raised in the amended complaint, had not been violated.

**5.** The district court observed as well that in *Procunier v. Martinez*, 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974) the Supreme Court had approved censorship of mail sent by prisoners in certain circumstances. The trial judge concluded that prison officials must, *a fortiori*, have the right simply to open and read such mail.

**6.** The nonconstitutional grounds for decision were neither advanced in the complaint nor addressed by the district court.

**7.** *Hagans v. Lavine*, 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577, 591 (1974); *Communist Party v. Subversive Activities Control Bd.*, 367 U.S. 1, 120, 81 S.Ct. 1357, 1422, 6 L.Ed. 625, 703 (1961) (Warren, C. J., dissenting); *Alma Motor Co. v. Timken-Detroit Axle Co.*, 329 U.S. 129, 136–37, 67 S.Ct. 231, 233–34, 91 L.Ed. 128, 133 (1946); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346–47,

ruled upon by the lower court. The Supreme Court has on several occasions even applied the doctrine when the nonconstitutional ground was not presented by the parties, but was first noticed by the Court itself.

For example, the Supreme Court granted certiorari in *Rosenberg v. Fleuti*[8] in order to consider the constitutionality of the application to George Fleuti of section 212(a)(4) of the Immigration and Nationality Act of 1952, which allowed the deportation of aliens who, at the time of their entry into the United States, had a "psychopathic personality." But "upon [its] consideration of the case," the Court "concluded that there is a threshold issue of statutory interpretation in the case," obviating the need to rule on the constitutionality of the section of the statute originally challenged.[9] The Court proceeded to address the question whether Fleuti's return to the United States after a visit of a few hours to Mexico was an "entry," as that term was defined in the Act, since if it were not, the constitutionality of section 212(a)(4), whose applicability depended upon an entry, would not have to be decided.[10] The lower court had not considered the preliminary statutory question,[11] and, as noted in the dissenting opinion, Fleuti had not argued in the Supreme Court that his return to the United

States was not an entry.[12] Yet the rule against reaching a constitutional issue if it can be avoided led the majority nonetheless to rest its decision upon the statute alone.[13]

The same approach was taken by the Supreme Court in *Mackey v. Mendoza-Martinez*[14] and *Neese v. Southern Railway Co.*[15] After oral argument in *Mendoza-Martinez,* the Court *sua sponte* asked the parties to brief the nonconstitutional question that would make decision on the constitutional issue unnecessary, and then remanded the case with permission to the parties to amend the pleadings to include the nonconstitutional question.[16] In *Neese,* the Court reversed the judgment of the court of appeals outright, "follow[ing] the traditional practice of [the] Court of refusing to decide constitutional questions when the record discloses other grounds of decision, whether or not they have been properly raised . . . by the parties."[17] And in *Peters v. Hobby,*[18] the Court refused to address the constitutionality of a decision of the federal Loyalty Review Board when it discovered, without the question's first being raised by the parties, that the Board's actions were illegal because they exceeded the scope of the jurisdiction conferred by the executive order that had created the Board.[19]

The teaching of these Supreme Court decisions is that we must resolve Allen's ap-

---

56 S.Ct. 466, 482–83, 80 L.Ed. 688, 710–11 (1936) (Brandeis, J., concurring).

**8.** 374 U.S. 449, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963).

**9.** *Id.* at 451, 83 S.Ct. at 1806, 10 L.Ed.2d at 1002.

**10.** *Id.* at 460–63, 83 S.Ct. at 1811–12, 10 L.Ed.2d at 1007–09.

**11.** 302 F.2d 652 (9th Cir. 1962).

**12.** 374 U.S. at 464, 83 S.Ct. 1813, 10 L.Ed.2d at 1010 (Clark, J., dissenting).

**13.** Recognizing that "attention was not previously focused upon the application . . . to the case" of the section of the Act defining "entry," *id.* at 462, 83 S.Ct. at 1812, 10 L.Ed.2d at 1008, the Court remanded the matter for further consideration of that question in view of the Court's lengthy analysis of the requirements of that section. *Id.* at 463, 83 S.Ct. at 1812, 10 L.Ed.2d at 1009.

**14.** 362 U.S. 384, 80 S.Ct. 785, 4 L.Ed.2d 812 (1960) (per curiam).

**15.** 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955) (per curiam).

**16.** 362 U.S. at 385, 387, 80 S.Ct. at 787, 4 L.Ed.2d at 814. Three Justices would not have remanded the matter, but would have had the Supreme Court itself rule on the nonconstitutional issue. *Id.* at 388, 80 S.Ct. at 787, 4 L.Ed.2d at 815 (Clark J., dissenting).

**17.** 350 U.S. at 78, 76 S.Ct. at 132, 100 L.Ed. at 61.

**18.** 349 U.S. 331, 75 S.Ct. 790, 99 L.Ed. 1129 (1955).

**19.** *Id.* at 388 and n.6, 75 S.Ct. at 794, 99 L.Ed. at 1137. *See also Dandridge v. Williams,* 397 U.S. 471, 475–76 n.6, 90 S.Ct. 1153, 1156–57, 25 L.Ed.2d 491, 496–97 (1970). The Supreme

peal by relying on the nonconstitutional claims that he has presented in this Court, even though they were not raised before, if by so doing we may avoid deciding the constitutional questions set forth in his complaint.

## B.

■ It was suggested at oral argument that we may not bypass the constitutional issue with regard to Allen's prayer for damages, even assuming that the contract and prison rules were violated by the defendants. The reason asserted for this exception to the rule against unnecessarily reaching a constitutional question is that we cannot say that a plaintiff who goes to the fact finder for damages on a nonconstitutional basis would recover as large a judgment as he would if he sought damages on a constitutional basis.

But our consideration of the issue, in light of the record in this case, must nonetheless be limited to the alleged infringement of the contract and prison handbook. This is so because one of the constitutional

Court very recently followed the same pattern in refusing to address an equal protection challenge to certain aspects of the Illinois Welfare Program. *Youakim v. Miller,* —— U.S. ——, 96 S.Ct. 1399, 47 L.Ed.2d 701, 44 U.S.L.W. 4467 (1976) (per curiam). The Court recognized the possibility of avoiding the constitutional issue by resort to a "statutory" question that had not been raised in the lower court: whether the Illinois scheme conflicted with the Social Security Act. *See Swift & Co. v. Wickham,* 382 U.S. 111, 122–23, 86 S.Ct. 258, 264, 265, 15 L.Ed.2d 194, 202 (1965) (supremacy clause claim is not a "constitutional" challenge for purposes of convening a three-judge court, 28 U.S.C. § 2281). The particular circumstances of the case led the Court to remand for a decision on the statutory question, since a ruling that the Illinois law did not comply with federal law would obviate the need to pass on the equal protection issue. —— U.S. at ——, 96 S.Ct. at 1401, 47 L.Ed.2d at 706, 44 U.S.L.W. at 4468. *Youakim* differs from the cases discussed in the text only in that both parties in *Youakim* pressed the statutory issue in the Supreme Court, *id.* at ——, and —— n.1, 96 S.Ct. at 1401 and 1402 n.1, 47 L.Ed.2d at 705 and 706 n.1, 44 U.S.L.W. at 4467 and 4468 n.1, making it a stronger case for a judicial decision based upon the statutory question.

claims may not be adequate for purposes of recovering damages, and the other may be insufficiently pleaded. Those determinations will be left to the district court on remand.

The amended complaint, insofar as relevant here, merely recites a set of facts and then avers that "[o]pening the sealed and addressed envelope, and reading the legal material contained therein, violated [Allen's] right of meaningful access to the courts as guaranteed by the Due Process Clause of the Fourteenth Amendment; and violated his right to the freedom of speech guaranteed by the First Amendment and the Due Process Clause of the Fourteenth Amendment." The facts alleged in the complaint and developed at trial do not necessarily set forth an infraction of the right of access to the courts.[20] With regard to the first amendment violation alleged in the complaint, it is possible that the claim is not specific enough to confer standing upon Allen.[21]

The constitutional claims may not, for the same reason, be addressed in the context of

20. Cf. *Wolff v. McDonnell,* 418 U.S. 539, 576, 94 S.Ct. 2963, 2984, 41 L.Ed.2d 935, 962 (1974).

21. Cf. *Bigelow v. Virginia,* 421 U.S. 809, 816–17, 95 S.Ct. 2222, 2229–30, 44 L.Ed.2d 600, 608–09 (1975); *Laird v. Tatum,* 408 U.S. 1, 13–14, 92 S.Ct. 2318, 2325, 2326, 33 L.Ed.2d 154, 163–64 (1972).

The Supreme Court advised in *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam), that *pro se* civil rights complaints are to be read with great liberality, and that dismissal is proper only if it appears beyond a doubt that the plaintiff cannot prove a set of facts that would entitle him to relief. *Id.* at 520–21, 92 S.Ct. 595–96, 30 L.Ed.2d 653–54. But the presumption against dismissal established in *Haines* may not operate here. Although Allen drafted the original complaint himself, the amended complaint—which is the one that includes the only allegation that is presently before this Court, *see* note 2 *supra* —was drafted by a third year law student (not the same law student representing Allen in this Court), who was representing Allen pursuant to Local Rule 9½ of the District Court for the Eastern District of Pennsylvania. The rationale of *Haines,* that those who have no legal training are entitled to have their pleadings read as liberally as possible, may not apply to a complaint prepared by someone with substan-

Allen's request for injunctive and declaratory relief, either. Nor should they be if the claim bottomed upon nonconstitutional grounds is successful, for an injunction based upon a breach of a contract or of local prison rules might well be every bit as effective as one predicated upon a constitutional infraction. We thus move now to an analysis of the regulations and prison rules.

### C.

As authorized by Congress,[22] the federal Bureau of Prisons and the City of Philadelphia executed a contract in 1975 providing for the holding of federal prisoners in the City's prisons. The treatment of Allen during his temporary stay in the Philadelphia Detention Center, while he was awaiting his habeas corpus hearing, was governed in part by a set of "exhibits" appended to the contract. Exhibit A contains a section that sets out limitations on the opening and reading of court-addressed mail by prison authorities.[23] Because the contract was not brought to the attention of the district court, that court did not rule upon its applicability or effect.

Allen has also submitted to this Court another argument not raised before the district court. He contends that the defendants violated that portion of the handbook governing operations of the Philadelphia prison system which prohibits all censorship of mail sent by prisoners. Again, because the issue was not placed before it, the district court did not rule on the effect of this portion of the handbook.

Assuming Allen's version of the facts to be true, he may be entitled to at least a portion of the relief he has sought if the terms of the contract or of the handbook apply to the defendants' treatment of his letter. But rather than decide the issue ourselves, without the benefit of the district court's views on the matter, we will remand the case in order that it may be "aired first"[24] at the trial level. On the remand, Allen may seek permission to amend his complaint to include a claim based upon the alleged violation of the contract and handbook[25] and to revise that portion of his complaint alleging an abridgement of his constitutional rights.[26] The trial court

tial legal training, even if he was not yet a member of the bar of the district court when the complaint was filed. This is especially so where, as here, the complaint was drafted under the supervision of a lawyer admitted to the bar.

**22.** 18 U.S.C. § 4002 (1970).

**23.** That section of Exhibit A provides in part that "[f]ederal prisoners . . . must be permitted to write . . . the United States district judge . . . without their letters being opened or read by institution officials." We read the phrase "United States district judge" to encompass the clerk of the United States District Court, to whom Allen's letter was actually addressed.

Exhibit A is a verbatim copy of the Bureau's "Regulations Governing Custody and Treatment of Federal Prisoners in Nonfederal Institutions." Because the Bureau has not traditionally been recognized as an "agency" within the contemplation of the Administrative Procedure Act, 5 U.S.C. § 551(1) (1970), it has not published its regulations in the Federal Register, see 5 U.S.C. § 552(a)(1)(D) (1970). Challenges to the failure of the Bureau of Prisons to follow the dictates of the Administrative Procedure Act are currently being litigated in the

District of Columbia. A panel of the Court of Appeals for the District of Columbia Circuit unanimously agreed that the Bureau is an "agency," and remanded the matter for further proceedings. *Ramer v. Saxbe*, 522 F.2d 695, 697, 705 (D.C.Cir.1975). The case is now pending before the District Court for the District of Columbia. *Ramer v. Levi*, No. 294-73 (D.D.C.).

**24.** *Youakim v. Miller*, —— U.S. ——, ——, 96 S.Ct. 1399, 1401, 47 L.Ed.2d 701, 706, 44 U.S. L.W. 4467, 4468 (1976) (per curiam).

**25.** We do not now rule whether a violation of the provisions of the contract or of the handbook would be cognizable under 42 U.S.C. § 1983 or only under a pendent state law claim.

**26.** *Cf. Youakim v. Miller*, —— U.S. ——, 96 S.Ct. 1399, 47 L.Ed.2d 701, 44 U.S.L.W. 4467 (1976) (per curiam); *Mackey v. Mendoza-Martinez*, 362 U.S. 384, 387, 80 S.Ct. 785, 787, 4 L.Ed.2d 812, 814 (1960) (per curiam). Counsel for the prison officials stated at oral argument that the policy of the Philadelphia prison system prohibiting the opening and reading of prisoners' court-addressed mail will be strictly obeyed in the future. This representation would appear to reduce any impact that the delay in final decision, caused by the remand,

should thereafter resolve the factual dispute in order to determine whether it is necessary to address the applicability of any well-pleaded grounds for relief then contained in the complaint.

### III.

The judgment of the district court will be vacated, and the cause will be remanded for proceedings consistent with this opinion.

may occasion. On remand, similar representations may be considered by the district court as relevant to Allen's prayer for declaratory and injunctive relief.