Staff Sergeant Agustin CORREA,
Appellant,

v.

Honorable William Graham CLAYTON,
Jr.,* Secretary of the Navy, et
al., Appellees.

No. 75–1879.

United States Court of Appeals,
Ninth Circuit.

Oct. 19, 1977.

* Honorable John E. Warner, the former Secretary of the Navy, was originally one of the appellees. We have substituted his successor pursuant to Rule 43(c)(1), Fed.R.App.P.

Dennis Niles, Hilo, Hawaii, argued; Paul D. Alston, Honolulu, Hawaii, appeared for appellant.

Howard T. Chang, Asst. U. S. Atty., Honolulu, Hawaii, argued for appellees.

Before ELY, HUFSTEDLER, and WRIGHT, Circuit Judges.

ELY, Circuit Judge:

Staff Sergeant Agustin Correa, U.S.M.C., appeals from the District Court's denial of his motion for a preliminary and a permanent injunction restraining the Marine Corps from issuing a general discharge to separate him from the service. He alleged that the administrative discharge procedure employed by the Marine Corps operated to deprive him of due process rights guaranteed by the Fifth Amendment. Correa also appeals from the denial of his motion for reconsideration on the ground of newly discovered evidence that prescribed Marine Corps regulations were not applied.

Sergeant Correa enlisted in the Marine Corps in March, 1956. He was last attached to the First Marine Brigade, Fleet Marine Force, Kaneohe Marine Corps Air Station, Oahu, Hawaii. On September 20, 1973, Correa's Commanding Officer recommended to his superior that Correa be separated from the Marine Corps because of unfitness, pursuant to Marine Corps Separation and Retirement Manual [MARCOR-SEPMAN] ¶ 6017.2a. Correa's commander relied upon an investigation by the Naval Investigative Service Office of several incidents of so-called indecent exposure by Correa. A four-member administrative board heard Correa's case on February 5, 1974. Correa had received prior notice of the charges. He attended the hearing and was represented by military counsel. After hearing testimony from Correa and his counsel, the board ruled "that due to his sexual perversion, specifically, indecent exposure, Correa is deemed unfit for further military service." In accordance with MARCORSEPMAN ¶ 6027, the Staff Judge Advocate of the First Marine Brigade, one Haiman, reviewed and approved the decision. He then forwarded the record of the board's proceedings to Brigadier General W. L. Smith, the Commanding General of the First Marine Brigade. General Smith reviewed the administrative discharge decision, including Haiman's submission, and recommended to the then Commandant of the Marine Corps that Correa receive a general discharge.[1] On March 15, 1974, the

---

1. There are three types of discharges that may result from administrative proceedings, honorable, general, or undesirable. 32 C.F.R. § 41.-3(1) (1976). A general discharge is appropriate "when a member's military record is not sufficiently meritorius [sic] to warrant an Honorable characterization, as prescribed by the regulations of the Service concerned." Id. § 41.-9(a)(2). Because the vast majority of servicemen receive honorable discharges, a general discharge severely stigmatizes its recipient and significantly disadvantages him in the job market. See Unglesby v. Zimny, 250 F.Supp. 714, 717 (N.D.Cal.1965); Crawford v. Davis, 249 F.Supp. 943, 953 (E.D.Pa.), cert. denied, 383 U.S. 921, 86 S.Ct. 923, 15 L.Ed.2d 676 (1966);

Commandant ordered that Correa be immediately separated from the service with a general discharge.

## I.

Correa brought his action in District Court on March 29. He elected not to challenge the facts underlying his discharge. His primary allegation was that he was denied the opportunity to present to General Smith or the Commandant a rebuttal to a highly prejudicial summary of his case by the Staff Judge Advocate's office.[2] His lack of access may have prejudiced him by influencing the Commandant's decision not to grant him a specified term of probation in lieu of immediate discharge.[3]

Correa's motion for reconsideration was predicated upon an alleged violation of a Marine Corps regulation stating that an Administrative Discharge Board must consist of three "experienced" commissioned officers. 32 C.F.R. § 41.5(a) (1976). According to Correa, a second lieutenant with two years of service who sat on Correa's board allegedly lacked the requisite experience. Correa also claimed that there were technical defects in the administrative steps used to appoint board members.[4]

## II.

At the time Correa filed suit he had served for over eighteen years with the Marine Corps, including four separate tours of exemplary combat duty in Vietnam. He needed to remain on duty for nineteen years and six months, only until August, 1976, in order to become eligible for his retirement benefits, which included a pension of $325 per month. Because he was due for reenlistment in April, 1976, it would ordinarily have been necessary for him to reenlist in order to serve the approximately four additional months necessary to qualify him for retirement and all its incidental benefits. Correa's petition for reenlistment was denied, but in April, 1976, our court stayed the discharge or other removal of Correa pending disposition of the appeal.

Rather than relieving Correa from active duty, as the appellees were not prevented from doing by our injunction, his superior officers have chosen to retain Correa on active duty since the time of the administrative decision. Correa's immediate superiors apparently believed that Correa's continued service, with pay, would be valuable to the Marine Corps and to our country. Both the District Court injunction and the injunction of this court prohibited only his discharge, not his release from active duty. It is incongruous that while the administrative discharge board had deemed Correa unfit for service, his immediate superiors apparently disagreed.[5] Thus, the Corps extended Correa's previous enlistment contract. He was issued orders, and he performed the same duties and received the same pay as before the discharge proceedings. The record indicates that Correa's conduct since the discharge proceedings has been exemplary, and he has now served

---

Lunding, *Judicial Review of Military Administrative Discharges,* 83 Yale L.J. 33, 35 (1973).

**2.** Moreover, Correa complains that he was given permission to appeal to the ultimate Discharge Authority only if he waived the presentation of a defense. *Cf. Robinson v. Resor,* 152 U.S.App.D.C. 204, 469 F.2d 944 (1972); *Cole v. United States,* 171 Ct.Cl. 178 (1965); *Middleton v. United States,* 170 Ct.Cl. 36 (1965); *Clackum v. United States,* 296 F.2d 226, 148 Ct.Cl. 404 (1960).

**3.** Only the Commandant, as the Discharge Authority authorized to take "final action" with respect to the Administrative Discharge Board, 32 C.F.R. § 41.3(i) (1976), could grant probation to Correa. *Id.* § 41.4(a)(4).

**4.** "Recent review of a number of administrative discharge proceedings at Headquarters Marine Corps has revealed two recurring deficiencies. These are the appointing of a larger number of members to an administrative discharge board than are reasonably expected to sit in any single case, and the signing of an appointing order for the board 'by direction' of or 'for' the commander actually empowered to exercise that appointing authority."

Marine Corps Bull. 1900 (Mar. 7, 1974).

**5.** In the light of Correa's long period of satisfactory service, and considering the nature of Correa's aberration, we are somewhat mystified as to why Correa was not given the benefit of medical review.

more than the requisite nineteen years and six months.

At oral argument on June 6, 1977 we allowed the parties an additional sixty days to explore the possibility of a settlement whereby Correa would voluntarily retire from the Marine Corps and be given his full retirement benefits. We have now been advised, however, that the appellees have refused to engage in any such negotiations with Correa's counsel.

### III.

■ This case presents difficult questions concerning the application of procedural due process to military administrative proceedings. Although the Constitution clearly provides servicemen some protection from arbitrary or unfair administrative discharges, *Covington v. Anderson,* 487 F.2d 660, 664 (9th Cir. 1973); *Arnheiter v. Ignatius,* 292 F.Supp. 911, 920 (N.D.Cal.1968), *aff'd,* 435 F.2d 691 (9th Cir. 1970), the contours of due process in the military community are far from clear. *See generally Middendorff v. Henry,* 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976); *Parker v. Levy,* 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *Harmon v. Brucker,* 355 U.S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958); *Denton v. Secretary of Air Force,* 483 F.2d 21 (9th Cir. 1973), *cert. denied,* 414 U.S. 1146, 94 S.Ct. 900, 39 L.Ed.2d 102 (1974); *Reed v. Franke,* 297 F.2d 17 (4th Cir. 1961); *Lunding, supra* note 1. There is a second problem. Correa did not resort to two post-discharge administrative remedies, remedies from either the Board for Correction of

Naval Records, *see* 10 U.S.C. § 1552 (1970); 32 C.F.R. § 723 (1976), or the Navy Discharge Review Board, *see* 10 U.S.C. § 1553 (1970); 32 C.F.R. § 724 (1976). This is explicable upon the basis that the relief available from those bodies is generally available only after discharge, and Correa was resisting his discharge only until the brief remaining period necessary for the fixing of his rights had elapsed. Numerous courts have held that exhaustion of military administrative remedies is a prerequisite to judicial relief. *E. g., Champagne v. Schlesinger,* 506 F.2d 979 (7th Cir. 1974); *Pickell v. Reed,* 446 F.2d 898 (9th Cir.), *cert. denied,* 404 U.S. 946, 92 S.Ct. 301, 30 L.Ed.2d 262 (1971); *McCurdy v. Zuckert,* 359 F.2d 491 (5th Cir. 1966). Although the exhaustion issue was not raised on appeal, it is quasi-jurisdictional in nature, and thus the court may consider it *sua sponte. Champagne, supra,* 506 F.2d at 982.

■ In the unusual circumstances of this case, however, we do not now reach either the exhaustion or the due process question. Rather, in view of the proceedings at oral argument[6] and the subsequent failure of settlement negotiations, we think it wise to remand the cause to the District Court. That court should initially consider whether Correa's retirement benefits did not irrevocably vest as a result of Correa's retention on active duty, serving the Corps as he had done for over eighteen years, after the discharge decision, a retention resulting in his now having been on active duty well beyond the 19½ years of service required for the vesting of his retirement rights.[7] As the parties have not yet addressed the

6. The attorney representing the appellees himself indicated a feeling that the divestiture of Correa's benefits, after the Marine Corps had voluntarily utilized Correa's services until the requisite time for the vesting of those benefits had elapsed was inequitable.

7. More specifically, either the doctrine of estoppel or the doctrine of waiver might prevent the Marine Corps officials from denying retirement benefits to Correa. While courts generally have granted the Government, as distinguished from individual representatives of the Government and from Government agencies, immunity from waiver and estoppel, *see, e. g., United States v. California,* 332 U.S. 19, 40, 67

S.Ct. 1658, 91 L.Ed. 1889 (1947), some courts have recently denied immunity, even to the Government, when the interests of justice seem so to require. *See United States v. Georgia-Pacific Co.,* 421 F.2d 92 (9th Cir. 1970) (Government not immune when seeking specific performance of contract); *Dana Corp. v. United States,* 470 F.2d 1032, 1045, 200 Ct.Cl. 200 (1972) (detailed hearing appropriate to determine whether elements of estoppel were present); *Branch Banking & Trust Co. v. United States,* 98 F.Supp. 757, 766, 120 Ct.Cl. 72 (1951) (Government estopped to deny validity of governmental contracting officer's modification of contract).

point, we conclude that in the interest of orderly procedure the District Court should first consider and attempt to resolve the legal and factual issues of such grave concern to Sergeant Correa and his family.

In reaching our conclusion, we are guided by the traditional principle that "a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available." *Hagans v. Lavine,* 415 U.S. 528, 547, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *see Mackey v. Mendoza-Martinez,* 362 U.S. 384, 80 S.Ct. 785, 4 L.Ed.2d 812 (1960) (per curiam); *Alma Motor Co. v. Timken-Detroit Axle Co.,* 329 U.S. 129, 67 S.Ct. 231, 91 L.Ed. 128 (1946). This rule against unnecessary constitutional adjudication applies even when neither the trial court nor the parties have considered the nonconstitutional basis for decision. *Neese v. Southern Ry.,* 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955); *Allen v. Aytch,* 535 F.2d 817 (3d Cir. 1976).

As noted above, we express no opinion on the issue of exhaustion of administrative remedies. However, in considering Correa's entitlement to retirement benefits, as well as his challenge to his attempted discharge, the court may at some time be required to examine the availability of administrative relief. *Champagne v. Schlesinger,* 506 F.2d 979 (7th Cir. 1974). During oral argument, the United States Attorney represented that Correa had no avenue to the Board for Correction of Naval Records prior to discharge. This is not invariably true. *See Schwartz v. Covington,* 341 F.2d 537 (9th Cir. 1965). Thus, the District Court should consider extending the injunction so as to allow Correa to seek predischarge administrative relief. And, of course, the court will carefully review the availability and efficacy of post-discharge administrative remedies if and when it may be required to make a decision in respect to the validity, *vel non,* of the decision that Correa should be discharged in the attempted manner.

The order denying injunctive relief is vacated, and the cause is remanded for further proceedings consistent with the views herein expressed.

If, after further proceedings in the District Court, either party takes an appeal, that appeal will be referred to the judges here involved. Such an appeal, if any, may be taken upon the present record, supplemented by the record of any additional proceedings that may occur.

SO ORDERED.