754 F.2d 1516
 Captain Dale M. HARTIKKA, United States Air Force, Plaintiff/Appellee,
v.
UNITED STATES of America, United States Air Force, and Verne
Orr, Secretary of the United States Air Force,
Defendants/Appellants.
 No. 84-5604.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Dec. 7, 1984.
Decided March 6, 1985.
 
 William G. Smith, Los Angeles, Cal., for plaintiff/appellee.
 Marc Richman, U.S. Dept. of Justice, Washington, D.C., for defendants/appellants.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED, ANDERSON and FERGUSON, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 The Air Force appeals the district court's issuance of a preliminary injunction. It contends that the district judge based his ruling on the application of an erroneous legal standard. Specifically, appellants argue that the standard enunciated in Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), governs cases where military personnel seek preliminary injunctive relief prohibiting a discharge. We agree and hold that the district court's judgment must be reversed and its order vacated.
 
 BACKGROUND
 
 1
 The appellee, Dale M. Hartikka, is a captain in the United States Air Force. With the exception of a three-year period in which he served in the Air Force Reserve, Hartikka has continuously served as a pilot with the Air Force since entering active duty as a commissioned officer on January 3, 1978.
 
 
 2
 On March 8, 1983, an Air Force Board of Inquiry was convened to consider certain charges of drunk and disorderly conduct against Hartikka. Following a hearing on the charges, Hartikka was found, on two occasions, too intoxicated to perform his duties and, on a third occasion, he was found to have wrongfully discharged a semi-automatic weapon in the direction of a neighbor's house while highly intoxicated. The Board recommended that Hartikka be discharged for committing these acts. The Secretary of the Air Force followed this recommendation and approved a discharge "under honorable conditions (general)." Such a discharge is "[a]ppropriate when a member's military record is not sufficiently meritorious to warrant an honorable characterization." 32 C.F.R. Sec. 41.9(a)(2).
 
 
 3
 Hartikka immediately applied for administrative review of the Secretary's decision with the Air Force Board for Correction of Military Records. He also filed a complaint in United States District Court seeking injunctive and declaratory relief, alleging certain procedural irregularities in the processing of his discharge.
 
 
 4
 The district court granted Hartikka's motion for preliminary injunction, finding that he had "demonstrated that he has a fair chance on the merits of his claim" and that "[t]he balance of hardships tips sharply in [Hartikka's] favor." E.R. at 4-5 (emphasis added).
 
 
 5
 On appeal, the sole issue is whether the district court erred in issuing the preliminary injunction, thereby prohibiting the Air Force from discharging appellee, pending administrative review of Hartikka's discharge.
 
 DISCUSSION
 
 6
 The grant of a preliminary injunction will be reversed where the district court has abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. Sierra On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1421 (9th Cir.1984).
 
 
 7
 The crucial inquiry in this matter concerns the appropriate standard for granting injunctive relief. " 'The critical element in determining the test to be applied is the relative hardship to the parties.' " Id. (citing Benda v. Grand Lodge of the International Association of Machinists, 584 F.2d 308, 315 (9th Cir.1978), cert. denied, 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979)). The usual standard, applied by the district court, requires that the moving party show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of hardships tips sharply in favor of the moving party. See, e.g., William Inglis & Sons Baking Co. v. I.T.T. Continental Baking Co., Inc., 526 F.2d 86, 88 (9th Cir.1975).
 
 
 8
 Application of the standard enunciated by the Supreme Court in Sampson would, however, require that the moving party make a much stronger showing of irreparable harm than the ordinary standard for injunctive relief. 415 U.S. at 84, 91-92 n. 68, 94 S.Ct. at 950, 953-954 n. 68. That is, where the balance of harm tips less decidedly toward a plaintiff, he must make a greater showing of a likelihood of success on the merits than where the balance tips decidedly in his favor. Benda v. Grand Lodge, supra, 584 F.2d at 315. The necessity of making this stronger showing is implicit in the magnitude of the interests weighing against judicial interference in the internal affairs of the armed forces. See, e.g., Sampson, 415 U.S. at 83-84, 94 S.Ct. at 949-950, and Orloff v. Willoughby, 345 U.S. 83, 93-94, 73 S.Ct. 534, 539-540, 97 L.Ed. 842 (1953). While we realize that the rule in Sampson concerned the rights of civilian employees, we agree that it should also be applied to military personnel. See Chilcott v. Orr, 747 F.2d 29, 32-34 (1st Cir.1984). See also, Peeples v. Brown, 444 U.S. 1303, 1305, 100 S.Ct. 381, 383, 62 L.Ed.2d 300 (1979). Consequently, we conclude that the district court erred in application of the traditional standard for injunctive relief.
 
 
 9
 We next examine whether Hartikka has demonstrated sufficient irreparable injury to satisfy the test. Although the Sampson court did not specify what type of irreparable injury would satisfy its higher standard, it indicated that the circumstances must be "genuinely extraordinary"; that is, they must be a "far depart[ure] from the normal situation" of employment discharge. Sampson, supra, 415 U.S., at 91-92 and n. 68, 94 S.Ct. at 953-954 and n. 68.
 
 
 10
 Hartikka's claims of irreparable injury are based on assertions of loss of income, loss of retirement and relocation pay, and damage to his reputation resulting from the stigma attaching to a less than honorable discharge. ER at 84-85. Our review leads us to conclude that these alleged injuries are insufficient under the Sampson standard to justify injunctive relief. The loss of income, the ensuing collateral effects thereof, and the possibility of stigma are "external factors common to most discharged employees and not attributable to any unusual actions relating to the discharge itself [and] will not support a finding of irreparable injury, however severely they may affect a particular individual." Sampson, 415 U.S. at 92 n. 68, 94 S.Ct. at 953 n. 68.
 
 CONCLUSION
 
 11
 For the foregoing reasons, the judgment of the district court, granting preliminary injunctive relief, isREVERSED and its order
 
 
 12
 VACATED.
 
 FERGUSON, Circuit Judge, dissenting:
 
 13
 I dissent. This case does not involve a simple termination of employment but the harsh realities of a military general discharge. Captain Hartikka, the plaintiff here, has shown the required "genuinely extraordinary" irreparable injury, different in "kind and degree" and "far depart[ing] from the normal situation" involved in employee discharge cases. Sampson v. Murray, 415 U.S. 61, 84, 92 n. 68, 94 S.Ct. 937, 953 n. 68, 39 L.Ed.2d 166 (1974).
 
 
 14
 The district court granted a preliminary injunction, finding that Captain Hartikka raised serious questions concerning the prior administrative proceedings and that the balance of hardships tipped sharply in his favor. See Beltran v. Myers, 677 F.2d 1317, 1320 (9th Cir.1982). Serious questions were raised concerning the adequacy of Hartikka's counsel at the administrative proceeding, the absence of instructions to the decision-making body, the introduction of a cancelled Department of Defense Directive quoted by government counsel in recommending discharge for misconduct, and the questionable validity of the Board's decision in light of 32 C.F.R. Secs. 62.2, 62.4(a)(5) and 62.4(a)(6). These regulations make it the policy of the Department of Defense, including all defense components such as the Air Force, to "[t]reat or counsel alcohol and drug abusers and rehabilitate the maximum feasible number of them," 32 C.F.R. Sec. 62.4(a)(5), and to permit only the "[d]iscipline and/or discharge [of] drug traffickers and those alcohol and drug abusers who cannot or will not be rehabilitated." 32 C.F.R. Sec. 62.4(a)(6). Captain Hartikka successfully completed the Air Force's alcoholic rehabilitation program at San Diego and has not consumed any alcohol since September 1982. His discharge, after his successful rehabilitation, based upon three isolated incidents of alcoholism which took place before he entered the rehabilitation program, is contrary to the Department of Defense regulations in favor of rehabilitation and retention.
 
 
 15
 Furthermore, other than the three isolated incidents of alcoholism upon which the Board of Inquiry based its decision, Captain Hartikka has had an exemplary career as an officer in the Air Force. He has received numerous commendations and awards. Even after the events which led to the discharge proceedings, Captain Hartikka received many letters of appreciation from his superior officers. His Officer Effectiveness Reports have always been outstanding, including those given to him after he was recommended for discharge. In his current position he received the highest possible ratings an officer can receive. As recently as October 5, 1983, he received a letter from Lt. Col. Kent W. Morey, Chief, Combat Operations of the 63rd Airlift Wing, recommending Hartikka's retention in the United States Air Force. All this shows that Hartikka is just the type of officer who can be successfully rehabilitated and retained in keeping with Air Force policy.
 
 
 16
 Not only has Captain Hartikka raised serious questions concerning his impending involuntary discharge, there has been an ample showing that the balance of relative hardships tips sharply in his favor. A "general" discharge is a highly stigmatized discharge. Correa v. Clayton, 563 F.2d 396, 397 n. 1 (9th Cir.1977); Van Bourg v. Nitze, 388 F.2d 557, 559 n. 1 (D.C.Cir.1967). Such a discharge will make it almost impossible for Hartikka to obtain employment in his chosen career in the civilian community. No commercial airline would even consider hiring a pilot who was discharged from the Air Force for misconduct with a general discharge. Under current F.A.A. regulations, Captain Hartikka would be able to obtain recertification and a medical clearance after two years of sobriety. He will not be able to take advantage of that recertification with his life stigmatized by a general discharge because, even if certified by the F.A.A. as cured of alcoholism, with such a discharge he will never obtain employment as a civilian pilot.
 
 
 17
 Clearly, the harm Captain Hartikka would suffer if given a wrongful discharge outweighs the harm the Air Force would suffer if Hartikka were to be maintained in his current nonflying position. Indeed, as discussed above, Captain Hartikka has received the highest possible ratings an officer can receive on his current Officer Effectiveness Report as well as numerous commendations from his present superiors.
 
 
 18
 Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), upon which the majority relies, does not counsel a contrary conclusion. Sampson dealt with the question of whether a district court had authority to grant interim injunctive relief to a civilian federal probationary employee pending an administrative appeal to the Civil Service Commission. The Court held that a district court had authority to grant interim injunctive relief in such cases but that an employee would be required to make a stronger showing of irreparable harm than in other cases before relief would be granted. The Court then found that the plaintiff had not made such a showing--the affidavit she submitted to the district court did not touch in any way upon considerations relevant to irreparable injury and her complaint alleged only general damage to her reputation and temporary loss of income. 415 U.S. at 88, 90-91, 94 S.Ct. at 951, 952-953. The Court did not, however, rule out the possibility of ever making such a showing.
 
 
 19
 The plaintiff in Sampson was a civilian probationary employee and not a servicemen. In the case before us, we do not have a simple termination but termination plus a "scarlet letter." A general discharge is something which will encumber Hartikka for the rest of his life--it will keep coming back to haunt him. Indeed, in Correa v. Clayton, 563 F.2d 396 (9th Cir.1977), a case decided after Sampson, this court vacated the district court's order denying injunctive relief to a Marine Corps staff sergeant seeking a preliminary and permanent injunction restraining the Marine Corps from issuing a general discharge to separate him from service. In the pre-Sampson case of Schwartz v. Covington, 341 F.2d 537 (9th Cir.1965), this court, finding that an Army enlisted man was likely to prevail on the merits of his appeal and that he would suffer irreparable injury if injunctive relief was denied, affirmed the district court's grant of a stay of the plaintiff's undesirable discharge pending review by the Army Board for Correction of Military Records.
 
 
 20
 Captain Hartikka clearly has met the more stringent test of Sampson. He has shown that he will suffer "genuinely extraordinary" irreparable damage if the injunction is not granted. The injury and the stigma attached to a general discharge are clear. Cf. Schwartz v. Covington, 341 F.2d at 538. "Because the vast majority of servicemen receive honorable discharges, a general discharge severely stigmatizes its recipient and significantly disadvantages him in the job market." Correa v. Clayton, 563 F.2d at 397 n. 1. Unlike the plaintiff in Sampson, Captain Hartikka made clear in his affidavit submitted to the district court the irreparable injury he would suffer, see 415 U.S. at 88, 94 S.Ct. at 952, and alleged more than mere humiliation and damage to his general reputation. See id. at 91, 94 S.Ct. at 953. He has shown that even though successfully cured and rehabilitated in the Air Force's own program, he would be unable to obtain employment as a pilot. This is far different from the possible stigma attached to the discharge of the employee in Sampson.
 
 
 21
 The First Circuit, in Chilcott v. Orr, 747 F.2d 29 (1st Cir.1984), applied the Sampson test to applications for preliminary injunctions by military personnel. The court in that case determined that under Sampson a general discharge under honorable conditions from the Air Force "is not an injury of sufficient magnitude to warrant an injunction." 747 F.2d at 34. The facts in Chilcott, however, were quite different from those in the case before us. The plaintiff in Chilcott --who, while on leave, was arrested for selling L.S.D. to an undercover police officer--did not go through any rehabilitation program and was not himself found to be a drug addict. Furthermore, the Chilcott court did state that if the plaintiff in a military discharge case could make the strong showing required by Sampson, he could be entitled to relief. Id.
 
 
 22
 Our circuit has indicated in a post-Sampson case that the stigma attached to a general discharge could establish the showing of irreparable injury required for the issuance of a preliminary injunction in a military discharge case. Correa v. Clayton, 563 F.2d 396 (9th Cir.1977). Indeed, as discussed above, the realities of a general discharge are very different from those involved in the normal situation of employment discharge. Furthermore, the Air Force in this case has acted contrary to the Department of Defense regulations in favor of rehabilitation and retention. 32 C.F.R. Secs. 62.2, 62.4(a)(5), 62.4(a)(6). Governmental agencies must act in accordance with their own regulations. See 5 U.S.C. Sec. 706(2)(A), (C). The arbitrary conduct on the part of the Air Force here further distinguishes this case from Sampson and establishes the higher level of irreparable injury required in employee discharge cases.
 
 
 23
 Contrary to the majority's conclusion, the district court should be affirmed. Sampson held that general claims for damage to reputation could not support an injunction, and that injury must be shown which is different "in kind and degree." 415 U.S. at 84, 94 S.Ct. at 950. The specific stigma and injury resulting from a wrongful discharge based on misconduct (an "undesirable" or a "general" discharge) is such an injury, different in both kind and degree, and is sufficient to sustain the issuance of an injunction and in the present case.